Wayne E. KENNEY and Linda A. Kenney, Plaintiffs-Counterclaim Defendants-Appellees,

v.

LEWIS REVELS RARE COINS, INC., Defendant-Appellant.

Paul WHITING, Defendant-Counterclaim Plaintiff-Cross-Claim Defendant-Appellee,

v.

William E. HARGRAVES, Defendant-Counterclaim Plaintiff-Cross-Claim Plaintiff-Appellant.

No. 83–8121.

United States Court of Appeals, Eleventh Circuit.

Sept. 11, 1984.

George H. Connell, Jr., Atlanta, Ga., for Paul Whiting.

Ben L. Weinberg, Jr., Marvin A. Devlin, W. Anthony Moss, Atlanta, Ga., for Lewis Revels Rare Coins.

Al Bridges, Arthur H. Glaser, B. Holland Pritchard, William C. Lanham, W. Wray Eckl, Atlanta, Ga., for Hargraves.

Before GODBOLD, Chief Judge, HILL, Circuit Judge, and THORNBERRY,* Senior Circuit Judge.

GODBOLD, Chief Judge:

In this case we review a jury verdict and award in favor of plaintiffs against Lewis Revels Rare Coins, Inc. and its two employees, Paul Whiting and William Hargraves. We affirm the judgment with respect to awards against Revels and Whiting. With respect to Hargraves, the trial court's instructions improperly allowed the jury to impute to Hargraves the negligence of his co-employee Whiting, who was driving the truck at the time of the accident. The jury

* Honorable Homer Thornberry, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

could have used this imputed negligence to bar Hargraves's counterclaim against plaintiffs and cross-claim against Whiting. Therefore we reverse the judgment insofar as it granted an award to plaintiffs against Hargraves and barred Hargraves's counterclaim against plaintiffs and cross-claim against Whiting.

## I. Background

Both Whiting and Hargraves were employees of Lewis Revels Rare Coins, Inc. Revels instructed the two to transport a rented U-Haul truck from Georgia to New York in furtherance of Revels's precious metals business. The jury could have inferred from the evidence that they shared control of the automobile.[1] While on I–81 in Virginia, the truck, driven by Whiting, crashed into the rear of plaintiffs' van, which plaintiffs contended had been pulled into the left median and off the road because of inclement weather conditions. Both plaintiffs suffered personal injuries. Plaintiffs alleged that Whiting had been negligent in driving too fast for conditions and that this negligence proximately caused the accident. Alternatively, plaintiffs contended that, even if Linda Kenney had been negligent in failing to pull completely off the road, Whiting had the last clear chance to avoid the accident. Both of these issues were hotly disputed. The jury resolved the credibility choices in favor of plaintiffs and against all three defendants and awarded Wayne Kenney $221,280 and Linda Kenney $479,100 against all defendants. The jury found against Whiting on his counterclaim against plaintiffs and against Hargraves on his counterclaim against plaintiffs and cross-claim against Whiting.

## II. Imputation of Whiting's negligence to Hargraves

Plaintiffs alleged that Whiting and Hargraves were engaged in a joint venture so that Whiting's negligence could be imputed to Hargraves to render him liable as a defendant and to bar his counterclaim against plaintiffs. Whiting adopted this argument on appeal in order to sustain the barring of Hargraves's cross-claim against Whiting. Since the jury was instructed to impute negligence only for a joint venture, it necessarily found that Hargraves and Whiting were engaged in a joint venture.

We must decide whether the facts justified a joint venture instruction. So far as we, with the aid of the parties, can tell, the Virginia courts, whose law we look to under Georgia's lex loci delicti conflicts rule, have never addressed the question whether, when two co-employees are about their master's business, the negligence of the driver may be imputed to the passenger absent some understanding or venture outside of the employment relationship. The courts of other states are not uniform in their views. Since Virginia has no certification procedure, *Erie* requires us to decide what rule the Virginia Supreme Court would apply. We believe the better view is that negligence should not be imputed to the passenger under the facts of this case, and, simply because it is the better view, we assume that Virginia would adopt it. The district court erred in giving the instruction on joint venture. Hargraves is entitled to a new trial on his counterclaim and cross-claim and reversal of the plaintiff's judgment against him.

The classic discussion of a joint venture, and the one used by the district court to charge the jury, appears in *Miles v. Rose*, 162 Va. 572, 585, 175 S.E. 230, 235 (1934):

That the negligence of the driver in operating an automobile may be imputed to a person riding therein with him on the ground that they are engaged in a joint enterprise, it is not sufficient that they have a mutual or joint interest in

1. Hargraves testified as follows:
   Q: Did you have any control over the operation of the van when Mr. Whiting was driving?
   A: No more than he did.
   Q: Mr. Hargraves, did I understand you to say that you and Mr. Whiting had equal control over each other, whatever he had to do, you had to do.
   A: All I know is that I drove part of the time. I didn't try to exercise any control over him, nor did he me while I was driving.

the objects and purposes of the trip. There must be a joint enterprise as hereinafter defined in controlling, directing, and governing the operation of the automobile. The relationship between the parties arising from the engagement, express or implied, between them, must be such that each of them has, or is, entitled to exercise a voice as to the manner in which the automobile shall be controlled and operated while making the trip. If the relationship between the parties is such that each is entitled to exercise a voice in the control and operation of the automobile, it is not material that the one not driving does not know how to operate an automobile, or has no opportunity actually to control the conduct of the driver, or that it has been expressly agreed or is necessarily understood that he will not interfere with the driver in the control and operation of the automobile. But the engagement between the parties must have given rise to a relationship between them such that each is entitled to a voice in the control and operation of the automobile.

Virginia courts have not clarified the application of this doctrine between co-employees about their master's business when that business is their only common enterprise.

Most jurisdictions hold that the mere existence, as between the driver and the passenger, of the relationship of co-employee or fellow servant does not bar recovery by the nondriving employee against a negligent person despite the fellow employee's negligence. *See* 1 *Blashfield Automobile Law and Practice* § 62.34, at 513 & nn. 85–86 (F. Lewis & P. Kelly 3d ed. 1965), and cases cited therein; *see also* W. Prosser, *Law of Torts* § 72, at 478 & n. 92 (4th ed. 1971) ("In the absence of circumstances indicating [an understanding that the passenger has a right to have his wishes respected], it has been held that ... fellow servants in the course of their employment, although they may have a common purpose in the ride, are not engaged in a joint enterprise.") (footnotes omitted). Other courts have imputed negligence to the pas-

senger co-employee where both employees have an equal right to drive. *See* 1 *Blashfield Automobile Law and Practice, supra,* at 514 & n. 89, and cases cited therein.

In *Parton v. Weilnau,* 169 Ohio St. 145, 169, 158 N.E.2d 719, 735 (1959), the court explained the rationale for not imputing negligence between two co-employees when engaged in their master's business:

> In our opinion, it would be unreasonable to impose upon an employee responsibility for the negligence of his co-employee. Unlike an employer, an employee has no right to choose his co-employees. That choice is the right ... of his employer. Hence, although it may be reasonable to impose responsibility on an employer for what his employee does, it does not follow that it would be reasonable to impose any such responsibility on a co-employee for what that employee does. We believe therefore that imputation of negligence because of a joint enterprise should be confined to the kind of a joint enterprise where a member thereof can select his joint adventurers, just as a partner can select his partners, and an employer can select his employees. In such instances, there is some justification for making a member of the joint enterprise responsible for what another member does in its execution.

The Restatement (Second) of Torts also follows the majority rule. *See* Restatement (Second) of Torts § 491 comment f (1965) ("The fact that the plaintiff and the driver are fellow servants of a common master and are both acting in the course of their master's employment and in furtherance of his business does not make them participants in a joint enterprise, and this is true irrespective of whether the vehicle is owned by the master, the fellow-servant driver, or by the plaintiff himself.").

■ The hallmarks of a joint venture under *Miles v. Rose* exist in this case only by virtue of the employment relationship. There was no "engagement" and accompanying understanding between the parties except as co-employees. Hargraves did not

choose Whiting to accompany him. They had no mutual interest in the trip. The trip was the employer's, and Hargraves's and Whiting's only common interest was in doing their employer's bidding. They shared control because their employer told them to drive straight through to New York, and fulfilling that responsibility necessarily required shared control and taking turns at the wheel.

The parties have not directed us to any characteristics of Virginia law that would portend what the Virginia Supreme Court might do with this question. We believe the Virginia Supreme Court, if faced with the question without binding precedent, would adopt the majority rule because it is the better reasoned view.

We do not hold that co-employees can never be engaged in a joint venture. We hold only that, as best we can predict what the Virginia law would be, when the characteristics of the joint venture arise only from the employer's pursuits and not from any additional and consensual understanding between the employees, the co-employee driver's negligence cannot be imputed to the passenger.

### III. Jury instructions

■ Revels argues that the district court erroneously instructed the jury in several respects. At trial counsel for Revels neither objected to these charges nor urged the alternative charges he now advocates. Revels contends that counsel for Whiting took the lead in the liability phase of the trial and that Revels should be able to rely on Whiting's exceptions to the charge. Revels points to no stipulation or statement to the court that an objection of Whiting would be an objection of all defendants unless they opted out. Although the trial court referred to counsel for Whiting as lead counsel, the court indicated that all other counsel would be able to participate as well, and the record in fact reflects that counsel for the other defendants, including Revels, made objections throughout the proceedings.

The explicit terms of Fed.R.Civ.P. 51 doom Revels's argument: *"No party* may assign as error the giving or the failure to give an instruction unless *he* objects thereto before the jury retires to consider its verdict ...."* (emphasis added). Revels argues that the rule allowing one party to take advantage of a co-party's objection to the admission of evidence during a trial likewise should apply to exceptions to jury charges. This argument fails to consider the language differences between Fed.R. Evid. 103 and Fed.R.Civ.P. 51, and practical differences between evidentiary objections and exceptions to a jury charge. Fed.R. Evid. 103 states that error may not be predicated on an erroneous ruling unless "a timely objection or motion to strike appears of record." This language has led courts to allow co-parties to take advantage of objections that they did not make as long as the objection and grounds appear of record. *See Loose v. Offshore Navigation, Inc.,* 670 F.2d 493, 496–97 (5th Cir.1982); *Howard v. Gonzales,* 658 F.2d 352, 355 (5th Cir.1981) (Unit A). Moreover, the practical difficulties with requiring other counsel in a multi-party trial to say " 'me too' " on evidentiary questions render this an appropriate rule. *See Loose,* 670 F.2d at 497.

The language of Rule 51, on the other hand, specifically requires the party alleging error to have made the objection. Also the practical difficulties with requiring multiple evidentiary objections are not present when exceptions to the charge are made. In this case, as in most trials, out of the presence of the jury, the court asked counsel for each defendant if he had any exceptions to the charge. Each defendant's counsel, including Revels's, responded by making objections. Revels did not object to any of the instructions it now contests and did not adopt the objections of its co-party Whiting. Under Rule 51 Revels cannot question those charges now. None rises to the level of plain error.

### IV. Evidentiary rulings

Revels also seeks to take advantage of Whiting's objections to certain evidentiary matters in order to challenge those rulings. Under the caselaw discussed above, except for the challenge to Dr. McNamee's discus-

sion of the x-rays, Whiting's objections sufficiently preserved for review the evidentiary rulings that Revels now seeks to challenge.

The oral discussion by Dr. McNamee in his videotaped deposition of the contents of Linda Kenney's x-rays while giving his medical opinion was never objected to by anyone. Whiting's counsel objected only to the jury's seeing these unauthenticated x-rays and their admission into evidence. The procedure adopted by the court, to cover the screen but leave the sound on while the unauthenticated x-rays were visible, was apparently agreeable to all. Counsel for Whiting voiced no further objection, and his original objection was only to the jury's viewing the x-rays.

None of Revels's challenges to the court's evidentiary rulings has merit. The court did not abuse its discretion in determining that the probative value of Linda Kenney's testimony, that she experienced psychological problems after aborting her child as a result of her treatment for the injuries from the accident, outweighed the prejudicial effect. Defendants contended that Linda had psychotherapy because some of the doctors felt that her pain was emotional and not physical. The court allowed Linda to retake the stand and explain that she had psychotherapy as a result of her abortion. This was not error.

The admission of Linda's prior consistent statement made to Trooper Hoelen was proper under Fed.R.Evid. 801(d)(1)(B) because the statement was offered to rebut a charge of recent fabrication made by the defendants.

The testimony of and diagram drawn by Trooper Hoelen, based on statements made to him on the scene by Whiting, were admissions of a party opponent under Rule 801(d)(2) and properly admissible.

## V. Excessiveness of the verdict

The verdicts are not arbitrary, excessive, or against the weight of the evidence. The evidence more than supports the verdict and its amount.

## VI. Conclusion

We thus affirm the plaintiffs' judgment against Whiting and Revels and reverse the judgment against Hargraves on plaintiffs' claims. We reverse the judgment entered against Hargraves on his counterclaim against the plaintiff and on his crossclaim against Whiting. Hargraves is entitled to a new trial on these claims free from the erroneous instruction on joint venture.

AFFIRMED in part; REVERSED in part; and REMANDED.