**Glen W. KING, Plaintiff–Appellant,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant–Appellee.**

No. 88–5885.

United States Court of Appeals, Eleventh Circuit.

July 31, 1990.

John H. Gregory, Welbaum, Zook & Jones, Coral Gables, Fla., for plaintiff-appellant.

Lori J. Caldwell and Sharon Lee Stedman, Rumberger, Kirk, Caldwell, Cabaniss, Burke & Wechsler, Orlando, Fla., for defendant-appellee.

Before JOHNSON, Circuit Judge, HILL *, and HENLEY **, Senior Circuit Judges.

HENLEY, Senior Circuit Judge:

Following the loss of his yacht, the "One Mo' Time," Glen W. King brought an action on an all-risk boat owner's insurance policy against Allstate Insurance Company ("Allstate"). After a four-day trial, a jury returned a verdict in favor of Allstate. King now appeals from the final order of the district court.[1] We reverse and remand for a new trial.

In September or early October of 1986, King paid Allstate $294.90 for insurance for the One Mo' Time. Jeff Hages, the agent with whom King met in Louisiana, only had authority to bind $100,000 worth of temporary coverage, an amount less than the purported value of the boat. Consequently, sometime after October 3, the application for the insurance was sent from Allstate's local office to Allstate's regional underwriting offices for approval. King never, however, received a formal policy from Allstate. Instead, on November 12, 1986, King learned by letter that his temporary coverage would terminate on December 14, 1986.

On December 13, 1986 the One Mo' Time, en route from Orange Beach, Alabama to some point in Florida, sank about thirty miles off the coast of Pensacola, Florida. King, the only person on board, abandoned ship and hours later was rescued floating in the ocean. This lawsuit arose after Allstate denied any obligation to reimburse King for the loss of the boat.

Allstate argues that King provided it with erroneous information regarding the ship during the insurance application process. Among the contentions which Allstate made at trial were that King misstated the following: the purchase price and value of the boat, whether he had prior insurance on the vessel, and whether he had a prior insurance loss on the boat within five years of the application. At trial all of these allegations of misrepresentation were contested by King.

Allstate argues that under federal maritime law—which provides that a boat insurance contract is void for *any* material concealment, omission, or misrepresentation made by the insured in his application for such insurance, whether intentional or not —King's alleged misrepresentations voided the otherwise temporary insurance obligation Allstate had to him under a binder.[2]

---

* See Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable J. Smith Henley, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

1. The Honorable Norman C. Roettger, Jr., United States District Judge, Southern District of Florida.

2. We use "binder" to signify the temporary insurance coverage which results when one transacts coverage with an insurance carrier prior to the insured actually receiving a formal policy. The parties seem to disagree as to the distinction between "binders" and "policies," as well as to the type of coverage that was in effect at the time of the loss.

King maintains that the insurance, whether characterized as a "binder" or a "policy," was in full effect at the time of the loss, and that in any event the issue of voidness can only be determined under the purportedly applicable terms of the policy, or the law of Louisiana,[3] rather than maritime law. Under both the policy terms and Louisiana law, the policy would be void only if the insured *intentionally* concealed or misrepresented a material fact during the application process.

At the close of the evidence, the district court instructed the jury on the liability provisions of both federal maritime law and the policy, without indicating which liability regime was to govern the jury's deliberations when the two conflicted. The question presented by this appeal is whether this instruction was erroneous and prejudiced King's position so as to require a new trial.

## I.

The court gave the following instruction to the jury:

> ... Defendant claims that Plaintiff concealed or misrepresented material facts or circumstances at the time of applying for the insurance binder.
>
> In the case of marine insurance, the insured must disclose all facts material to the risk, and in default of such duty the contract must be voided by the insurer. In other words, an applicant for marine insurance must state all material facts which are known to him and unknown to the insurer. It has been said that the insured is bound to communicate every material fact within his knowledge not known or presumed to be known to the insurer, whether inquired for or not; and that a failure in either particular, although it may arise from mistake, accident, or forgetfulness, is attended with the rigorous consequence that the policy never attaches and is void, for the reason that the risk assumed is not the one intended to be assumed by the parties.

The insurance policy sets forth this language as follows: "This policy is void if you intentionally conceal or misrepresent any material fact or circumstance, before or after a loss...."

In arguing that only the policy language should have been submitted to the jury, King relies in part on *State Farm Fire & Casualty Co. v. Oliver*, 854 F.2d 416 (11th Cir.1988) (per curiam). In *State Farm Fire & Casualty*, the insurer sued for a declaratory judgment to relieve it of the obligation to pay for a fire loss under a homeowner's policy that referred to the avoidance of the policy only for intentional misrepresentations or concealments. A state statute, however, provided for avoidance of an insurance contract simply upon a showing that the insured made an erroneous statement or omission that was "[m]aterial either to the acceptance of the risk or to the hazard assumed by the insurer." *Id.* at 418. In holding that the district court erred in charging the jury that State Farm had to prove an increase in hazard in order to rescind the policy, the court of appeals determined that the insurer had contracted out of the state statute's more stringent application requirements for the insured and that the policy could be voided only for intentional misrepresentations or concealments. *See id.* at 419. The court of appeals concluded that "by setting a standard for judging the [insured's] ... misrepresentations and concealments that requires intent, [the insurer] ... waived its defenses of innocent misrepresentation under [the statute]." *Id.* at 420.

Allstate distinguishes *State Farm Fire & Casualty* as involving an insurance policy already in full effect. Allstate contends that cases such as *Gulfstream Cargo, Ltd. v. Reliance Ins. Co.*, 409 F.2d 974 (5th Cir.1969), which the district court cited as authority for its instruction, control here instead. In *Gulfstream Cargo*, we quoted with approval the following language from *Fireman's Fund Ins. Co. v. Wilburn Boat Co.*, 300 F.2d 631 (5th Cir.), *cert. denied,*

---

**3.** The district court ruled that in the absence of any "specifically controlling" federal authority, the law of the state where a marine insurance contract is issued and delivered—here, Louisiana—governs the construction of its language.

370 U.S. 925, 82 S.Ct. 1562, 8 L.Ed.2d 505 (1962):

> In the case of marine insurance the insured must disclose all facts material to the risk, and in default of such duty the contract may be avoided by the insurer. In other words, an applicant for marine insurance must state all material facts which are known to him and unknown to the insurer. It has been said that the insured is bound to communicate every material fact within his knowledge not known or presumed to be known to the underwriter, whether inquired for or not; and that a failure in either particular, although it may arise from mistake, accident, or forgetfulness, is attended with the rigorous consequences that the policy never attaches and is void, for the reason that the risk assumed is not the one intended to be assumed by the parties.

*Id.* at 646–47 (quoting 29 Am.Jur. *Insurance* § 690, at 956); *see, e.g., Sun Mut. Ins. Co. v. Ocean Ins. Co.*, 107 U.S. 485, 510, 27 L.Ed. 337 (1883); *Wathen v. Public Fire Ins. Co.*, 61 F.2d 962, 964 (2d Cir. 1932); *Thebes Shipping, Inc. v. Assicurazioni Ausonia Spa*, 599 F.Supp. 405, 427 (S.D.N.Y.1984).

We must decide what law governs, with regard to misrepresentation/omission during the insurance application process, for purposes of submitting instructions to the jury, given the conflict between rules of maritime law and the terms of the policy.

King argues Allstate freely elected to employ the policy terms and that these terms, rather than maritime law, therefore govern this business relationship. Allstate, on the other hand, contends the policy language is irrelevant because this language only applies after the policy, as distinct from binder coverage, has taken effect. Allstate argues that the binder, a wholly different insurance coverage than a policy, was the only operative insurance contract between the parties when King walked out of its offices on day one of their association.[4] Allstate argues that because there was misrepresentation and concealment at the application stage,[5] federal maritime law applies here and only requires Allstate to show an omission or misrepresentation by King due to accident or forgetfulness in order to void the binder.

■ It is clear that parties are free to "contract-out" or "contract around" state or federal law with regard to an insurance contract, so long as there is nothing void as to public policy or statutory law about such a contract. *See Scarborough v. Travelers Ins. Co.*, 718 F.2d 702, 709 (5th Cir.1983) (holding that insurance policy is the "law between the parties ... [and] must be enforced as written," unless its provisions are contrary to public policy or statutory law); *Compagnie Des Bauxites de Guinee v. Insurance Co. of N. Am.*, 551 F.Supp. 1239, 1242 (W.D.Pa.1982) (noting that insurance is a matter of contract, and parties are free to agree to any reasonable conditions not contrary to public policy), *aff'd*, 721 F.2d 109 (3d Cir.1983); *Zurich Ins. Co. v. Bouler*, 198 So.2d 129, 131 (La.Ct.App. 1967) (recognizing the "settled principle that a contract of insurance is a voluntary agreement between the parties, who may incorporate therein such provisions and conditions as they see fit").

Although this case clearly has a nexus to admiralty or maritime law, the issue before us is one more purely a matter of generic contract law. *See generally* 7 A.J. Moore & A. Palaez, MOORE'S FEDERAL PRACTICE ¶ 255[1], at 235 (Cum.Supp.1989–90) ("Regardless of what substantive law is applicable, it should be remembered that [maritime] insurance ... is still in great measure a matter of private contract, and all clauses in such private agreements

---

**4.** As far as we can tell, the "binder" is represented by the application which was submitted in King's briefs. Other than this document and the policy itself, no written insurance document has been made a part of the record.

**5.** The district court made no determination that any kind of omission or concealment was made by King. However, because the jury found in favor of Allstate, we must assume that the jury found innocent omission, intentional concealment, or both. No special interrogatory which would indicate the type of omission which the jury found, innocent or intentional, was presented to the jury.

which do not contravene public policy or statutory provisions will be enforced.'').

We believe *Gulfstream Cargo* is distinguishable from the case at bar. The *Gulfstream Cargo* court held that Florida and federal maritime law both vitiated a marine contract upon a showing of even accidental omissions at the insurance application stage. In that case, an insured had not divulged material information on seaworthiness at the application stage, and the insurance contract was held void ab initio. However, nothing about the *Gulfstream Cargo* holding, despite its sweeping language, could be construed to stand for the proposition that parties may not set the terms of their own contracts, even in a maritime insurance context. *Gulfstream Cargo* does not require this court to find that maritime law *must* apply in all cases and to all issues involving insurance on boats.

There was, in fact, no dispute as to which law to apply in *Gulfstream Cargo*.[6] In addition, the *Gulfstream Cargo* court did not confront any issue relating to the policy vis-a-vis either state or maritime law. Nor on appeal following a nonjury trial was there any issue alleging an erroneous jury instruction.

Although clearly there are maritime issues involved in this dispute, we believe the issue central here is whether the courts will allow the parties to decide for themselves what rules will govern their business affairs. There being no public policy problem whatsoever in parties to a maritime insurance contract setting the terms of the policy between them, we uphold their freedom to do so.

The question remains, however, whether the policy language is somehow irrelevant in these circumstances, and instead the contract is governed by the terms of federal maritime law. Allstate contends that be-cause of the alleged misrepresentation, no insurance ever took effect. King responds that regardless of any misrepresentation or omission, the insurance was in full effect at the time of the loss.

Allstate has cited this court to no case which holds that when parties to a maritime contract have set out the terms of an agreement, those terms become irrelevant simply because a binder policy was temporarily issued in advance of a formal policy. Neither *Gulfstream Cargo* nor any of the other cases in Allstate's brief stands for this proposition.

■ Although Allstate submits the policy is irrelevant,[7] it is "[h]ornbook insurance law that a binder merges into the subsequently issued policy so that the terms and conditions of the policy, in case of conflict or ambiguity, are controlling." *Brister v. Gulf Cent. Pipeline Co.*, 618 F.Supp. 104, 110 (W.D.La.1985), *aff'd*, 788 F.2d 1564 (5th Cir.1986); *see also Kellner v. Aetna Cas. & Sur. Co.*, 605 F.Supp. 331, 333 (M.D.Pa. 1984) (noting that a binder is a "complete, temporary, or preliminary contract" effective from the time it is issued until "issuance of the formal policy or until rejection of the risk").

Moreover, the following language from the insurance application, which was made a part of the record, supports the conclusion that the coverage which was bound as a result of the application is governed by the terms of the policy: "BINDER PROVISION—In reliance on the statements in this application and *subject to the terms and conditions of the policy* authorized for the Company's issuance to the applicant, the Company named binds the insurance applied for to become effective...." (emphasis added).

■ We keep in mind the generally accepted rule of insurance law that an ambig-

---

6. "When we come to the law it is direct and clear. And this is so whether the case is governed by the maritime law or whether ... it becomes a question of Florida law." *Gulfstream Cargo*, 409 F.2d at 980.

7. We note that Allstate answered King's original complaint, and by way of defense alleged that

King *intentionally* concealed and/or misrepresented material facts or circumstances in the application for insurance, thus rendering the subject policy void. One may wonder at the rationale for such an answer, if as Allstate argues, the policy was irrelevant.

uous insurance policy will be construed against the insurer and in favor of the insured. *See Canal Ins. Co. v. Brooks,* 201 F.Supp. 124, 127–28 (W.D.La.), *aff'd,* 309 F.2d 751 (5th Cir.1962). If there be ambiguity in this matter, and we are not sure there is, then that ambiguity is raised by Allstate through its argument that maritime law must apply to this dispute. We therefore construe the policy, as well as the language in the insurance application, against Allstate.

█ Taking all the above together, we find that (1) the parties contracted for their own standard to show misrepresentation or omission, and (2) the binder insurance coverage was effective subject to the terms of the policy. The insurance policy, therefore, controls the rights and obligations of the parties in the case at bar. Consequently, we hold there was no basis upon which to submit to the jury the instruction based on federal maritime law.

## II.

In connection with the trial court's alleged error in submitting a conflicting instruction to the jury, we must first determine if King properly preserved this issue for appeal. Allstate submits the issue of the conflicting jury instruction is not preserved for appellate review. *See* Fed.R. Civ.P. 51. Although Allstate concedes objection occurred on the issue initially, it points out that after the district court determined that it would instruct on both maritime law and policy language, there was no further objection, and the issue may not be reviewed upon appeal. *See, e.g., Kenney v. Lewis Revels Rare Coins, Inc.,* 741 F.2d 378, 382 (11th Cir.1984).

In response, King acknowledges that no further objection was made after the initial objection, but contends that such objection was not necessary. He relates the following events that transpired following his initial objection: extensive argument by both parties to the court on the issue of which charge should be submitted to the

jury, the court's command to the parties to "be quiet," and finally, the determination by the court to include language from both the policy and federal maritime law in the instruction. King argues that this sequence of events does not undermine his ability to raise this issue with the court of appeals.

█ In this circuit there are two exceptions to the requirement that a party object to an erroneous jury charge: "(1) where 'the party's position has previously been made clear to the court and it is plain that a further objection would have been unavailing,'" and "(2) where the error is 'so fundamental as to result in a miscarriage of justice' if a new trial is not granted." *Pate v. Seaboard R.R., Inc.,* 819 F.2d 1074, 1082 (11th Cir.1987) (quoting *Lang v. Texas & Pacific Ry. Co.,* 624 F.2d 1275, 1279 (5th Cir.1980), and *Iervolino v. Delta Air Lines,* 796 F.2d 1408, 1414 (11th Cir.1986)). We believe that at least the first exception is applicable here.

█ Considering all of the circumstances, King made it quite clear to the district court that he objected to *any* instruction involving maritime law. Moreover, we glean from the record that the disposition of the district court was not at all inclined to result in a change in the charge regardless of the number of objections on the point. We therefore hold King has preserved for appeal the question of whether the conflicting jury instruction was prejudicial error, an issue to which we now turn.

## III.

King argues that it was prejudicial error for the district court to instruct the jury that the policy would be void *either* under federal maritime law, if the concealment or misrepresentation was simply due to *mistake, accident, or forgetfulness* or under the terms of the policy, if there were an *intentional* concealment/misrepresentation.[8]

---

**8.** We examine this issue despite the fact we have already determined that the submission of the maritime law instruction standing alone was

error. We do so because it is possible that such erroneous instruction amounted to harmless error, a question we resolve adversely to Allstate.

King contends that instruction conflict requires reversal, due to the confusion fostered by the dual instruction and resulting prejudice to King. *See Andres v. Roswell–Windsor Village Apartments*, 777 F.2d 670, 673 (11th Cir.1985) (per curiam) (noting that the job of a reviewing court is to make sure " 'that the instructions show no tendency to confuse or mislead the jury with respect to the applicable principles of law' ") (quoting *Rohner, Gehrig & Co. v. Capital City Bank*, 655 F.2d 571, 580 (5th Cir. Unit B 1981)). The trial court has a duty to give instructions that are meaningful and translated into terms the jury can understand. *See Marshall v. Isthmian Lines, Inc.*, 334 F.2d 131, 138 & n. 15 (5th Cir.1964) ("We and other Courts have held that the duty is to give instructions which are meaningful and translated—not in terms of some abstract case—but into the facts of this particular case.").

"A jury cannot be expected to apply mutually conflicting jury instructions, where each set makes sense independent of the other.... [I]nstructions must provide 'the jury with the instructional equivalent of the mariner's compass and sea-lane map in order that the lay jurors might successfully complete their voyage.' " *Midwest Precision Servs. v. PTM Indus. Corp.*, 887 F.2d 1128, 1137 (1st Cir.1989) (quoting *Jamison Co. v. Westvaco Corp.*, 526 F.2d 922, 934 (5th Cir.1976)).

There is no dispute from Allstate that the instruction involved here was conflicting. Its only argument relates to its position that maritime law was properly used in the charge to the jury, and therefore harmless error results from the conflict. Had Allstate requested a special interrogatory upon which this court could determine the basis for the jury conclusion, this might well be a different case.[9] There was enough evidence at trial that a jury might

have found intentional misrepresentation. In such a scenario, we could have found the conflicting instruction erroneous, but knowing that the jury nevertheless found intentional misrepresentation, the error would be harmless. However, we may not do so on the record we have in this case; we will not step into the jury's shoes.

Because we find that maritime law is not applicable, and that the two parts of the instruction were diametrically opposed to one another, and because we cannot be certain that the jury did not simply find an innocent misrepresentation and not even reach the question of whether there was an intentional misrepresentation, we must REVERSE and REMAND this case for a new trial.

JOHNSON, Circuit Judge, dissenting:

Because I believe that this Court's decision in *Steelmet, Inc. v. Caribe Towing Corp.*, 747 F.2d 689 (11th Cir.1984), endorsing the rule in *Gulfstream Cargo, Ltd. v. Reliance Ins. Co.*, 409 F.2d 974 (5th Cir. 1969)[1], firmly established that in this Circuit federal law controls the interpretation of marine insurance even in the face of contrary state authority, I must dissent.

## I. ANALYSIS

In reviewing a challenge to jury instructions, this Court asks whether the instructions show any "tendency to confuse or to mislead the jury with respect to the applicable principles of law." *Rohner, Gehrig & Co. v. Capital City Bank*, 655 F.2d 571, 580 (5th Cir.Unit B 1981).[2] "So long as his jury instructions reflect the pertinent substantive law, the trial judge is given wide discretion as to the style and wording that he may employ." *Andres v. Roswell–Windsor Village Apartments*, 777 F.2d 670, 673 (11th Cir.1985). An erroneous instruction requires reversal where this

---

9. A general interrogatory read as follows: "Did the insurance binder issued by Allstate provide coverage for the claim filed by Plaintiff in accordance with the terms, conditions and exclusions of policy?" The jury checked "No".

1. All decisions of the former Fifth Circuit rendered prior to the close of business on October 1, 1981 constitute precedent binding on this

Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

2. *Rohner* was decided by Unit B of the former Fifth Circuit and therefore is binding precedent on this Court. *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982).

Court "is 'left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations,' " *National Independent Theatre Exhibitors, Inc. v. Charter Financial Group, Inc.*, 747 F.2d 1396, 1402–03 (11th Cir.1984), *cert. denied*, 471 U.S. 1056, 105 S.Ct. 2120, 85 L.Ed.2d 484 (1985) (quoting *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1372 (5th Cir.1981)), and where the party objecting to the instruction suffered "prejudicial harm." *See Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1525 (11th Cir.1985).

Marine insurance policies are governed by federal maritime law, where that law provides a specifically controling rule, and otherwise by the contract law of the state where the policy was issued. *See Eagle Leasing Corp. v. Hartford Fire Ins. Co.*, 540 F.2d 1257, 1261 (5th Cir.1976), *cert. denied*, 431 U.S. 967, 97 S.Ct. 2926, 53 L.Ed.2d 1063 (1977); *accord Ingersoll Milling Machine Co. v. M/V Bodena*, 829 F.2d 293, 305–06 (2d Cir.1987), *cert. denied*, 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 860 (1988).[3] This approach reflects the supremacy and uniformity traditionally accorded to federal maritime law. *See Kossick v. United Fruit Co.*, 365 U.S. 731, 738–39, 81 S.Ct. 886, 891–92, 6 L.Ed.2d 56 (1961).

The insurance policy in the present case provided that "[t]his policy is void if you intentionally conceal or misrepresent any material fact or circumstance, before or after loss." King thus argues that the court should have instructed that Allstate had to prove intentional misrepresentation on the original application in order to void the policy. As the majority noted *supra*, the district court instructed the jury as follows:

> In the case of marine insurance the insured must disclose all facts material to the risk, and in default of such duty the contract may be avoided by the insur-

er. In other words, an applicant for marine insurance must state all material facts which are known to him and unknown to the insurer. It has been said that the insured is bound to communicate every material fact within his knowledge not known or presumed to be known to the insurer, whether inquired for or not; and that a failure in either particular, although it may arise from mistake, accident, or forgetfulness, is attended with the rigorous consequences that the policy never attaches and is void, for the reason that the risk assumed is not the one intended to be assumed by the parties.[4]

The above standard is taken almost verbatim from *Gulfstream Cargo*, 409 F.2d at 980–81, which described it as a basic principle of maritime insurance law. In *Steelmet, Inc. v. Caribe Towing Corp.*, 747 F.2d 689, 695 (11th Cir.1984), this Court found that "[t]he general rule of marine insurance, requiring full disclosure, is well settled in this circuit, and as a clear rule of maritime law it is the controlling federal rule even in the face of contrary state authority[ ]". *Steelmet* then specifically quoted the *Gulfstream Cargo* standard to support its holding. *Id. Gulfstream Cargo* clearly furnishes a controlling standard on the issue of concealment and misrepresentation in marine insurance policies. Accordingly, King's contention that Louisiana law governs the interpretation of the policy in this case is meritless.

Determining that this policy should be interpreted in light of federal maritime law, however, does not end the inquiry. As the majority notes, this Court has held in one context that an insurer can "contract itself out of a misrepresentation-in-the-application defense". *State Farm Fire and Cas. Co. v. Oliver*, 854 F.2d 416, 419–20 (11th Cir.1988) (applying Alabama law to homeowner's policy). By agreeing to specific policy language providing that only inten-

---

**3.** The district court noted this principle in its June 14, 1988, Order Determining Choice of Law, holding that "in the absence of federal maritime law, Louisiana law governs construction of the contract herein." As the jury instructions reflect, however, the district court later

determined that federal maritime law did furnish a controlling standard in this case.

**4.** The district court then recited the policy language quoted above without explaining to the jury how it should reconcile the two standards.

tional misrepresentations will void the contract, the insurer can waive the defense despite the existence of a governing rule of law more favorable to it. *Id. Oliver* relied on the fact that Alabama courts had determined such contractual provisions to be "not contrary to public policy in Alabama." *Id.* at 420. By contrast, the *Gulfstream Cargo* standard relies strongly on the admiralty doctrine that marine insurance policies, "contrary to the general rule applicable to other kinds of insurance,"[5] demand *"uberrimae fidei"* (*i.e.,* requiring "the most perfect good faith" on the part of the insured).[6] This exception exists because "the underwriter often has no practicable means of checking on either the accuracy or the sufficiency of the facts furnished him by the assured before the risk is accepted and the premium and conditions set." *Steelmet,* 747 F.2d at 695 (quoting G. Gilmore & C. Black, *Law of Admiralty* 62 (2d ed. 1975)). The *uberrimae fidei* doctrine therefore counsels against the majority's ruling that the parties may contract around the *Gulfstream Cargo* rule merely because of the general principle that insurance policies should be liberally construed in favor of the insured and strictly against the insurer.

Absent an unambiguous statement that the parties intend to contract around the *Gulfstream Cargo* rule, the policy should be read to give effect to the contested language while remaining consistent with the principles of federal maritime law.[7]

This may be done by reading the debated clause to provide for avoidance based on intentional misrepresentations occurring any time after the policy takes effect or even after a loss has occurred while implicitly retaining the *Gulfstream Cargo* standard with regard to misrepresentations made in the course of *applying* for the policy. This reading would *add* to the insured's obligations rather than defining their outer limits. Because the parties failed to state unambiguously their intention to contract around the *Gulfstream Cargo* standard, *Oliver* does not support the majority's interpretation of the contested clause. For the foregoing reasons, the district court did not err in instructing the jury that even unintentional misrepresentations or nondisclosures by King could void the policy.

King makes a last-ditch argument that, even assuming the instruction based on the *Gulfstream Cargo* standard was correct, the instructions as a whole merit reversal because of the unresolved conflict between the *Gulfstream Cargo* standard and the quoted language of the policy. Regardless of how conflicting, contradictory, ambiguous, and confusing the instructions might have been in this regard, they could not possibly have prejudiced King.[8] Because the *Gulfstream Cargo* standard was correct, any confusion introduced by quoting the policy language could only have *benefitted* King. King therefore cannot claim

---

5. *See Gulfstream Cargo,* 409 F.2d at 981 n. 20 (quoting 45 C.J.S. Insurance § 645a).

6. *See id.,* 409 F.2d at 981 n. 20; *Black's Law Dictionary* 1363 (5th ed. 1979).

7. *See* Restatement (Second) of Contracts § 206(a) ("In the interpretation of a ... [contract] term ... an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, *unlawful,* or of no effect.") (emphasis added); *cf. Carriers Container Council, Inc. v. Mobile S.S. Assoc., Inc.,* 896 F.2d 1330, 1340 (11th Cir.1990) ("The court should review its interpretation of a labor-management contract for consistency with federal labor law.").

8. It is odd that the district court instructed the jury on both standards without providing any guidance on how to reconcile them, other than

reciting for the jury the principle that "in interpreting the policy ... where the language ... may be reasonably construed in more than one way, it should be construed in the light most favorable to the insured." This Court has established, however, that whether a contract is ambiguous or not is a question of law, *see International Bhd. of Boilermakers v. Local Lodge D111,* 858 F.2d 1559, 1561 (11th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1955, 104 L.Ed.2d 424 (1989), and that the meaning of an ambiguous contract, where no relevant factual dispute exists, should be resolved by the judge, not the jury. *See Ellenwood v. Southern United Life Ins. Co.,* 373 So.2d 392, 394 (Fla.App.1979). King thus correctly argued at the charge conference that the proper interpretation of this policy should not have been left to the jury.

to have suffered prejudice from this instruction. *Pesaplastic, C.A. v. Cincinnati Milacron Co.,* 750 F.2d at 1525.

## II. CONCLUSION

Because I believe that the district court properly instructed the jury that federal law controlled the interpretation of the contested marine insurance policy, I would Affirm the judgment below.