668 So.2d 251 (1996)
STRICKLAND IMPORTS, INC., a Florida Corporation, Appellant,
v.
UNDERWRITERS AT LLOYDS, LONDON, a Surplus Lines Insurer, Appellee.
No. 95-826.
District Court of Appeal of Florida, First District.
February 15, 1996.
*252 H. Tyrone Tyler of the law firm of Fannin, Tyler & Hamilton, P.A., Jacksonville, for Appellant.
Darlene M. Lidondici and David J. Ventura of the law firm of Fertig and Gramling, Fort Lauderdale, for Appellee.
ERVIN, Judge.
Appellant, Strickland Imports, Inc., seeks review of a final judgment entered in favor of appellee, Underwriters at Lloyds, London, on an insurance contract Lloyds issued covering two buildings on Strickland's property. The trial court's ruling was based on a misstatement in the insurance policy application and section 627.409, Florida Statutes (1993),[1] which authorizes a disallowance of an insured's recovery in the event of a misrepresentation by the insured. Strickland argues that the trial court erred in granting directed verdict to Lloyds because (1) Lloyds, through its agent, was on notice of the misstated facts, and (2) the parties' contractual agreement provided a different standard from that established in the statute for measuring misstatements in insurance applications. As we agree with Strickland on the second issue, we consider it unnecessary to reach the former, relating to Lloyds' knowledge. We therefore reverse and remand for new trial.
Strickland is an import auction business which also engages in retail sales. It owns a parcel of land on which several buildings are located, including Buildings 2106 and 2112. Building 2112 is T-shaped and was constructed in three phases, and Building 2106 is a nearby rectangular structure. These were the primary buildings Strickland used in its business. Both had been used for many years as warehouses; however, in March 1993, Strickland began operating a pillow manufacturing business in Building 2106.
These structures were insured through William Snell of Atlas Insurance Agency, who in turn procured insurance on the property with Specialty Insurance Services, a general agency representing a number of surplus lines carriers, including Lloyds. When Snell renewed the insurance coverage on the buildings for the period from July 7, 1993 through July 7, 1994, he described the nature of the business and its operations as follows on the application:
Insureds import auction type merchandise & sells to other auction houses wholesale. Merchandise such as knives, calculators, TVS, fans, trinkets, knick knacks, etc. They do sell retail items out of the 2112 address.
Snell did not list the pillow manufacturing business, because he was unaware of its existence, but he stated that he would have reported it on the application had he known. His standard procedure in completing the application included calling Mr. Strickland and asking whether any changes had occurred relating to the insured property. Strickland apparently replied there were none, so Snell signed the application and submitted it. He acknowledged that applications are used to determine the risk and that it is important to describe the risk accurately *253 on the application, because some risks are greater than others. In this case the risk was not accurately described.
Nevertheless, the insurer or its agent inspected the property every year. During the applicable period of time at issue, the property was examined by Robert Ratliff, an inspector employed by Specialty, who was under the erroneous impression that Building 2106 was part of the T-shaped Building 2112, and that the real Building 2106 was a third, uninsured building. As a result, when he entered what was in fact Building 2106 and witnessed the pillow manufacturing activity conducted therein, he considered that it was unnecessary to report the manufacturing of the pillows due to his mistaken belief that this structure was not insured and that it posed no risk to the insured buildings.
Evidence was also produced at trial that bedding is highly flammable, and that Lloyds would not have insured the building at the same rate had it been aware of the manufacture of pillows conducted on the premises.
On December 3, 1993, a motor on one of the machines used in the manufacturing operation caused Building 2106 to burn. Lloyds' denial of coverage was based on several theories, including misrepresentation. After submission of all the evidence, the trial court granted directed verdict in Lloyds' favor, pursuant to section 627.409, under the theory that Strickland had misrepresented the use of the building on the insurance application by neglecting to disclose the pillow manufacturing operation. We cannot agree that this case was appropriately disposed of by directed verdict.
"In reviewing the propriety of a directed verdict, an appellate court must view the facts and inferences to be drawn therefrom in the light most favorable to the person against whom judgment has been granted. A directed verdict can be upheld only if there is no evidence or reasonable inference from the evidence which will support the non-moving party's position." Kirby v. OMI Corp., 561 So.2d 666, 669 (Fla. 1st DCA), review denied, 574 So.2d 141 (Fla.1990), cert. denied, 499 U.S. 907, 111 S.Ct. 1108, 113 L.Ed.2d 217 (1991).
Strickland argues that the terms of the insurance policy, which void the contract only for intentional misrepresentation, control over section 627.409, providing that any misrepresentation, innocent or intentional, will invalidate the contract. In support of its argument, appellant relies on the following provision in the insurance contract, entitled "Concealment, fraud":
This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.
(Emphasis added.)
Although we have found no Florida cases directly on point,[2] we are persuaded to reverse based on applicable federal case law. In State Farm Fire & Casualty Co. v. Oliver, 854 F.2d 416 (11th Cir.1988), the court was asked to decide whether an Alabama statute, which was substantially similar to section 627.409, or an insurance contract that contained a provision voiding coverage only in the event of intentional concealment or misrepresentation, was controlling. In Oliver, as here, the insured failed to reveal certain facts that were material to the acceptance of the risk. After a fire had destroyed the insured's property, State Farm sought to void the policy under the Alabama statute based on the defense of misrepresentation, i.e., that the insured did not disclose the cancellation of a previous homeowners' policy at the time he applied for insurance from State Farm. The appellate court agreed with the insured's argument and held that once State Farm set its own contractual standard for assessing misrepresentations and concealment, it could not thereafter rely on *254 the statute which imposed more stringent requirements on insureds. Id. at 419. Accord King v. Allstate Ins. Co., 906 F.2d 1537 (11th Cir.1990) (neither Maritime Law nor Louisiana Insurance Code prevailed over the more generous provisions of the insurance contract, which permitted revocation of coverage only for intentional misrepresentations).
Based on the above cases, we reverse on this point, as the court's ruling on the motion for directed verdict relied solely on section 627.409 and did not consider the contract term and its effect on Lloyds' ability to void the policy under the statute. In so concluding, we note that we have considered the cases cited by Lloyds, but find them substantially dissimilar.[3]
REVERSED and REMANDED for new trial.
BOOTH and WEBSTER, JJ., concur.
NOTES
[1] Section 627.409 provides:

(1) Any statement or description made by or on behalf of an insured or annuitant in an application for an insurance policy or annuity contract, or in negotiations for a policy or contract, is a representation and is not a warranty. A misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the contract or policy only if any of the following apply:
(a) The misrepresentation, omission, concealment, or statement is fraudulent or is material either to the acceptance of the risk or to the hazard assumed by the insurer.
(b) If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.
[2] Florida case law has, however, in other contexts, recognized the rule that the more liberal provisions of the policy, rather than those of the statute, govern the determination of coverage. See Travelers Ins. Cos. v. Chandler, 569 So.2d 1337 (Fla. 1st DCA 1990) (Florida law did not preclude insurer from offering broader definition of uninsured motor vehicle than was provided in statute, and hence greater coverage).
[3] See, e.g., Progressive Am. Ins. Co. v. Papasodero, 587 So.2d 500 (Fla. 2d DCA 1991), review denied, 598 So.2d 77 (Fla.1992); Cycle Dealers Ins., Inc. v. Bankers Ins. Co., 394 So.2d 1123 (Fla.5th DCA 1981).