PACIFIC INSURANCE CO., Plaintiff,

v.

William D. KENT, Bank of
the West, Defendants.

And Related Counterclaims and
Third Party Claims.

No. CV 98–3912 ABC MCX.

United States District Court,
C.D. California.

March 7, 2000.

Neil S. Lerner, Brent G. Cheney, Sands, Narwitz, Leonard & Lerner, Los Angeles, CA, for plaintiff.

James T. Reed, Huntington Beach, CA, John K. Saur, Laguna Hills, CA, for defendant.

## ORDER GRANTING MOTIONS PURSUANT TO FED.R.CIV.P. 56

COLLINS, District Judge.

Plaintiff Pacific Insurance Company filed three summary judgment motions in November 1999. Third–Party Defendant Boat Owners Association of the United States, Inc. also filed a summary judgment motion. After reviewing the materials submitted by the parties and the case file, the Court GRANTS the summary judgment motions.

### I. Procedural Background

On May 19, 1998, Plaintiff Pacific Insurance Company filed a complaint against Defendants William D. Kent and Bank of the West ("Bank"). In its complaint, Pacific asks the Court to rescind the marine insurance contract that Kent obtained on his boat, the Portland Rose. Kent and Bank, which held a mortgage lien on the boat, filed counterclaims against Pacific for breach of contract and breach of the covenant of good faith and fair dealing. Kent also brought a counterclaim against Pacific's agent, Boat Owners Association ("BOA"), for breach of contract, bad faith, negligence and emotional distress. Bank brought a third party claim against BOA for negligence and negligent misrepresentation.

On December 31, 1998, Pacific filed a motion for summary judgment on its claims against Kent and Bank. On Bank's request pursuant to Fed.R.Civ.P. 56(f), the Court ordered Pacific's motion withdrawn to allow for further discovery. On November 19, 1999, Pacific again filed a motion for summary judgment on its rescission claim against Kent and filed a second motion for partial summary judgment against Bank. On November 22, 1999, Pacific filed a third motion for partial summary judgment on Bank's and Kent's bad faith claims. On the same date, BOA filed a motion for summary judgment on the negligence and negligence representation claims.[1] Kent and Bank have opposed.

### II. Summary Judgment Standard of Review

It is the burden of the party who moves for summary judgment to show that there is "no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir.1978). If the moving party has the burden of proof at trial (the plaintiff on a claim for relief, or the defendant on an affirmative defense), the moving party must make a showing sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99

---

1. The Court notes that these motions are not unrelated. Indeed, much of the memoranda and statements of genuine issues is repetitive. Pacific and BOA could have likely consolidated much of the material. Accordingly, the Court admonishes the parties for unnecessarily burdening the Court's time and resources.

F.R.D. 465, 487–88 (1984)). This means that, if the moving party has the burden of proof at trial, that party must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in that party's favor. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986).

If the opponent has the burden of proof at trial, then the moving party has no burden to negate the opponent's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, the moving party does not have the burden to produce *any* evidence showing the absence of a genuine issue of material fact. *Id.* at 325, 106 S.Ct. 2548. "Instead, ... the burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the moving party satisfies this initial burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings ... [T]he adverse party's response ... *must set forth specific facts* showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e) (emphasis added). A "genuine issue" of material fact exists only when the nonmoving party makes a sufficient showing to establish all essential element to that party's case, and on which that party would bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a reasonable jury could reasonably find for plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in favor of the nonmovant. *Id.* at 248, 106 S.Ct. 2505.

**2.** As required for purposes of a summary judgment motion, this section views the evi-

## III. Factual Background[2]

This lawsuit arises from the sinking of Kent's boat, the Portland Rose, on July 8, 1997. (*See* Kent's Resp. to Pacific's Stmnt. of Uncont. Facts ("Kent Facts") ¶ 22). At the time of the sinking, the Portland Rose was covered under a marine insurance policy issued by Pacific. (*Id.* ¶ 19.)

Kent initially obtained insurance from Pacific's predecessor by contacting BOA in February 1996. (*See* Kent's Resp. to BOA's Stmnt. of Uncont. Facts ¶¶ 5, 6.) Kent contacted BOA, Pacific's agent, by phone and provided information about the Portland Rose. (*Id.* at ¶ 5.) Based on the information provided by Kent, BOA filled out an application and sent it to Kent for his review and signature. (*Id.* at ¶ 9.) Kent signed the Application and submitted it to BOA. (Kent Facts ¶ 14.)

The top of the Application states in bold print: "It is critical that you correct wrong information and complete any information omitted." (*Id.* at ¶ 16.) Directly above the signature line, in bold and italicized print, the Application states:

> While my signature verifies this information to be true, this application does not bind me to acept [sic] insurance, nor does it bind [BOA] or the Insurance Company, to accept me as an applicant for insurance. If I accept, I hereby authorize any company, credit bureau, or Department of Motor Vehicles that has knowledge of me to give such information to [BOA] Underwriting to be used for [BOA] insurance purposes only. Omitting, misrepresenting or stating falsely on this application constitutes insurance fraud.

(*Id.* at ¶ 17.)

On the Application, "$500,000" was inserted as the "Boat Purchase Price." (Lerner Decl., Ex. A.) Kent, however, had not paid $500,000 for the Portland Rose. (Kent Facts ¶ 30.) He had paid, at most, about $300,000. (*Id.*) The Application spe-

dence in the light most favorable to the non-movants.

cifically asked for a list of "all claims or losses to boats or from liability in the past three years." (Lerner Decl., Ex. A.) Next to this request, the Application provides a box to be check if the applicant had sustained no claims or losses. (*Id.*) Kent did not check the box but also did not list any losses or claims. (*Id.*) However, in November 1994, a claim was filed with Kent's previous insurance company, Commercial Union, for an injury occurring to a third party on the Portland Rose. (Kent Facts ¶ 30.) Although Kent did not know about this claim, he believed that a claim had been filed. (Kent EUO 37:11–23.)[3]

The Application also indicated that Kent had not had any insurance canceled or refused in the past. (Lerner Decl., Ex. A.) However, Commercial Union had twice canceled Kent's policy for nonpayment. The first cancellation occurred in May 1994, (Langer Decl. ¶ 7), but Commercial Union had issued a policy with a different number covering the Portland Rose before the first cancellation, (*Id.* at ¶ 9). Moreover, this first cancellation was recorded on an internal document that was never shown to Kent. (*Id.*, Ex. A at 8.) The second cancellation occurred on January 25, 1996, over a month before Kent contacted BOA to obtain insurance. (*See id.* at ¶¶ 9, 10.)

Kent also stated on the Application that he had 30 years of boat ownership experience. (Langer Decl., Ex. A.) However, at his examination under oath, Kent testified that 30 years "definitely" overstated "by a lot" his actual ownership experience. (Kent EUO 56:22 – 57:12.) Indeed, at the time the Application was filled out, his ownership experience was closer to three years. (*Id.* at 55:5–7, 57:13–18.) Later at his deposition, Kent changed his position and testified that he did actually have about 30 years of boat ownership experience. (Kent Depo. at 30:8 – 31:13.)[4]

Pacific's policy on the Portland Rose became effective on March 1, 1996. (Kent Facts ¶ 12.) In April 1996, Pacific conducted a value survey of the Portland Rose. (Reed Decl., Ex. A.) The survey concluded that the replacement value of the Portland Rose was $390,000 and that the market value was $300,000. (*Id.*) Pacific ultimately insured the Portland Rose's hull for $340,000. (Lerner Decl. Exs. B & D.) The tentative insurance quotation issued in March indicated that the $340,000 was the maximum coverage obtainable "based on current market value of ... similar boats." (*Id.*, Ex. B.)

The Portland Rose's insurance policy was renewed in March 1997. The Portland Rose's hull was again insured for $340,000. (Bank's Opp. on Loss Payee Issue, Ex. A (Insurance Declaration Page).) The renewal was based in part on the information previously provided by Kent to BOA. (Kent Facts ¶ 19.) This renewed policy was in effect on the date of the loss and consists of the Declaration page and the BOA sample yacht insurance policy. (Bank's Stmnt. of Gen. Issues on Loss Payee Issue ¶ 43.)

The Declaration Page states "Loss, if any, payable to Named Insured & Bank of the West." (Bank's Opp. on Loss Payee Issue, Ex. A.) The sample yacht policy contains a "Fraud and Concealment" clause that states: "There is no coverage from the beginning of this policy if you ... have omitted, concealed, misrepresented, sworn falsely, or attempted fraud in reference to any matter relating to this insurance before or after a loss." (Kent Facts ¶ 50.)

During the period that Pacific's policy insured the Portland Rose, Kent placed the boat for sale, at least sporadically. (Kent Facts ¶ 40.) Kent never disclosed his efforts to sell the Portland Rose to Pacific or BOA. (*Id.* at 42.) At the same

---

**3.** "EUO" refers to Kent's Examination Under Oath.

**4.** Kent's relevant testimony at both his Examination Under Oath and at his Deposition is set forth at notes 9 and 10, *infra.*

time, neither Pacific nor BOA requested that information in any manner.

After the sinking of the Portland Rose on July 8, 1997, Kent filed a claim with Pacific. Pacific now seeks to rescind the insurance contract based on Kent's misrepresentations and concealments before and after the loss.[5]

## IV. Analysis

### A. California Insurance Law Applies

All parties agree that California law applies to this case. Because California marine insurance law and federal admiralty law are materially the same on the issues raised in this case, the Court will apply California law. *See Certain Underwriters at Lloyd's v. Montford*, 52 F.3d 219, 222 n. 1 (9th Cir.1995).

### B. Claims against and by Kent.

#### *1. Pacific's rescission claim against Kent.*

Pacific seeks to rescind the insurance policy issued to Kent because (1) Kent misrepresented and concealed material facts when he applied for his policy and (2) Kent lied under oath after filing the claim on the loss of the Portland Rose. The Court finds that summary judgment in favor of Pacific is appropriate.

#### *a. Applicable marine insurance law.*

■ California law imposes upon an applicant seeking marine insurance an "uttermost good faith" duty to disclose material facts to the insurer. *Id.* at 222. Specifically, an insured is under a duty to communicate "[a]ll the information which he possesses and which is material to the risk, except such as is exempt from such communication in the case of other insurance." Cal.Ins.Code § 1900. Where an insured fails to fulfill his or her obligation under this "uttermost good faith" duty of disclosure, the insurer is entitled to rescind and void the contract. *See Rallod v. Continental Ins. Co.*, 727 F.2d 851, 853 (9th Cir.1984). Additionally, an insurer can also rescind the contract where the insured makes any intentionally false representations, regardless of materiality. Cal.Ins.Code § 1904.

#### *b. The Application binds Kent.*

■ As a threshold matter, the Court must address Kent's contention that the statements in the Application cannot be construed as his representations because the Application was filled out by an agent of Pacific and he did not read it before signing it. (Kent Depo. 12:21 – 14:16.) Kent's position is without merit.

Kent's theory would allow a person to escape contractual, and in this case statutory, obligations by simply asserting that he or she did not read a document before signing it. Kent does not argue that Pacific made him sign under duress, nor does he argue that he did not understand the document he was signing, nor even that he is illiterate and therefore could not read the document.[6] Kent's sole argument is that he *chose* to not read the Application and simply looked for the signature line. Such willful ignorance will not be condoned. Kent will be bound to his signa-

---

5. The Court notes that along with its reply memorandum, Pacific filed objections to (1) the declaration of Lori Rivers and James Reed and (2) Bank's request for judicial notice of the declaration of Kimberly Chandler and of the net worth of Pacific.

Bank also filed evidentiary objections to the declarations of Grace Langer, Ann Hutchins, Neal Lerner, John Rhoads, and Scott Johnson.

Although the Court reviewed the evidence to which objections are asserted, it did not consider most of that evidence in the determi-

nation of these motions. Where the Court has relied upon the evidence in its recitation of the facts, the objections are OVERRULED on the merits. The remaining objections are OVERRULED as moot.

6. The Court does not intend to imply that any of these arguments would necessarily relieve a person from obligations arising from their signature on a document. However, such contentions would require serious consideration from the Court.

ture. *See Lunardi v. Great–West Life Assur. Co.*, 37 Cal.App.4th 807, 820, 44 Cal. Rptr.2d 56 (1995) (holding that party was bound by provisions of document that he signed even though he claimed that he signed form without reviewing, at insurer's insistence).

Kent signed the Application. The Application clearly stated that his signature verified that the information provided was true. Accordingly, Kent adopted the representations in the Application and verified the information's veracity.

### c. Misrepresentations in the Application.

The Court finds that Kent made false representations concerning the purchase price of the Portland Rose, his prior insurance cancellation history, and his prior boat ownership history.[7]

#### 1) The purchase price.

Kent stated in the Application that the purchase price for the Portland Rose was $500,000. The purchase price, however, was about $300,000. (Kent Facts ¶ 20.)

Kent argues, however, that his statement does not support summary judgment because the request for a "purchase price" is ambiguous. According to Kent, the phrase "boat purchase price" could reasonably be interpreted to refer to the present market value of the boat. (Kent's Opp. at 9.) Thus, his answer of $500,000 was valid because that answer was Kent's subjective view of the replacement value of the Portland Rose. (Kent's Depo at 18:20 – 19:17.) Moreover, because Pacific performed its own value survey, any misrepresentation as to the purchase price was immaterial. (Kent's Opp. at 8.)

■ Kent's contentions are without merit. The Application's request for a "purchase price" is not ambiguous and cannot be interpreted to mean the present market value or the replacement value. *See Montford,* 52 F.3d at 222. Accordingly, the "purchase price" listed in the Application is false. Moreover, Kent knew that he did not pay $500,000 for the Portland Rose. Therefore, Kent intentionally misrepresented the purchase price of the boat. Thus, Pacific is entitled to rescind the contract even if Kent's misrepresentation was not material. *See* Cal.Ins.Code § 1904.

■ Additionally, the false statement concerning the purchase price is material. "Materiality is to be determined ... solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract." Cal.Ins.Code § 334; *accord* Cal.Ins.Code § 360; *Washington Int'l Ins. Co. v. Mellone,* 773 F.Supp. 189, 191 (C.D.Cal.1990) (stating that a material fact is something which would have controlled the underwriter's decision to accept the risk). Generally, the purchase price of a vessel is considered a material fact. *See Montford,* 52 F.3d at 222. Similarly, "[t]he fact that the insurer has demanded answers to specific questions in an application for insurance is in itself usually sufficient to establish materiality as a matter of law." *Old Line Life Ins. Co. of America v. Superior Court,* 229 Cal.App.3d 1600, 1603–04, 281 Cal.Rptr. 15 (1991) (quoting *Thompson v. Occidental Life Ins. Co.,* 9 Cal.3d 904, 915–16, 109 Cal.Rptr. 473, 513 P.2d 353 (1973)).

Here, Pacific asked about the purchase price in its application. Pacific considered "[a]ll the information requested in the ... Application and Confidential Supplement ... important and essential to the evaluation of the marine risk and the rating of premiums, including, in particular, ... the purchase price...." (Rhoads Decl. ¶ 10.) Pacific also conducted a value survey before insuring the Portland Rose for $340,-

---

7. Because these misrepresentations are dispositive in this case, the Court need not reach Pacific's contentions that it is entitled to re- scission because Kent omitted his prior loss history and failed to inform Pacific of his efforts to sell the Portland Rose.

000. However, the Portland Rose was insured for a higher value than the market value indicated in the survey. (*See* Lerner Decl., Ex. B.) This fact is consistent with Rhoads' statement that the purchase price was used in evaluating the marine risk. Thus, the mere fact that Pacific conducted its own value survey does not support an inference that Pacific did not consider the purchase price in evaluating the risk.

### 2) *Prior cancellations.*

Kent stated in his application that no previous insurance company had canceled any of his policies. Pacific contends that this answer is false because Kent's policy on the Portland Rose was canceled twice by Commercial Union.

█ Commercial Union's first cancellation occurred after it had issued a separate policy to Kent that also covered the Portland Rose. No lapse of coverage occurred. Moreover, the cancellation is noted in an internal Commercial Union document with no indication that Kent was informed of this "technical" cancellation. The evidence supports Kent's contention that he did not know about this first cancellation. Thus, his failure to report this cancellation did not breach his duty of disclosure. *See* Cal.Ins.Code § 1900.

█ On the other hand, Pacific presents evidence that the second cancellation occurred just a few weeks before Kent sought insurance from BOA. Kent argues that this second cancellation does not support Pacific's rescission claim because "the materiality of this 'cancellation' question, being in such a confused factual context,

presents a question of fact for the trier of fact, both as to its materiality and to the intentionality." (Kent's Opp. at 13.)

The "confused factual context" appears to be related to the fact that the Commercial Union cancellation occurred near the time that the Pacific policy was issued. That proximity in time, however, does not create a factual issue as to the materiality of a statement. "The materiality of a representation is a question of law." *Merced County Mut. Fire Ins. Co. v. State of California*, 233 Cal.App.3d 765, 772, 284 Cal.Rptr. 680 (1991). The Court finds that Kent's cancellation history is material because Pacific requested that information in the Application. *See id.* ("The fact that the insurer has demanded answers to specific questions in an application for insurance is itself usually sufficient to establish materiality as a matter of law.") Thus, Kent's failure to disclose the insurance cancellation was a material omission and misrepresentation.[8]

### 3) *Prior boat ownership experience.*

Kent indicated in the Application that he had 30 years of boat ownership experience. However, he later admitted under oath that this statement was false and that his actual ownership experience at the time of the application was closer to three years. Later still, at his deposition, Kent recanted and testified that he indeed had about 30 years of ownership experience because he had previously owned a sailboat and had previously co-owned two boats with his brother. (*See* Kent Depo. 30:8 – 31:13.)

---

8. Kent also argues that the cancellation is immaterial because he disclosed the name of his prior insurance company, Commercial Union, to Pacific's agent, BOA. (Kent's Opp. at 13–14.) Kent's argument is without merit. Kent appears to rely on Cal.Ins.Code § 333 for his argument. (*See id.*) Section 333, however, does not address the materiality of information. Section 333 merely qualifies the insured's duty of disclosure as to information that is not expressly requested by the insurer. Thus, it does not apply to the cancellation

issue because Pacific expressly requested that information in its Application.

Kent also apparently believes that, but does not explain how, *Thompson v. Occidental Life Ins. Co.*, 9 Cal.3d 904, 109 Cal.Rptr. 473, 513 P.2d 353 (1973), supports his position. The Court notes that *Thompson*'s only similarity with this case appears to be that both involved an insurer asserting a right to rescind an insurance contract. *Thompson*, however, addresses facts that are wholly dissimilar to the facts in this case.

Kent points to his later deposition testimony as proof of a genuine issue of fact concerning his ownership experience. But, the "general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). Although *Kennedy* refers to the use of a later affidavit, courts have also precluded the use of a later deposition testimony to contradict prior sworn testimony. *See Bank of Illinois v. Allied Signal Safety Rest. Systems*, 75 F.3d 1162 (7th Cir.1996) (holding that, for purposes of summary judgment, a prior sworn statement cannot be contradicted by later deposition testimony that is a sham). This rule, however, must be applied with caution. *Kennedy*, 952 F.2d at 266. To apply this general rule, "the district court must make a factual determination that the contradiction was actually a 'sham.'" *Id.* at 267.

Testimony is a sham only if it "flatly contradicts earlier testimony in an attempt to 'create' an issue of fact." *Kennedy*, 952 F.2d at 267. Thus, testimony is not a sham if it merely "elaborat[es] upon, explain[s] or clarif[ies] prior testimony." *Messick v. Horizon Indust., Inc.*, 62 F.3d 1227, 1231 (9th Cir.1995). Contradictory testimony from a witness is not a sham where the witness was confused at the time of the earlier testimony and provides an explanation for the confusion. *Kennedy*, 952 F.2d at 266 (citing *Miller v. A.H. Robins Co.*, 766 F.2d 1102, 1104 (7th Cir. 1985)). Finally, contradictory testimony that results from newly discovered evidence is also not a sham. *Id.* at 267.

The Court finds that Kent's deposition testimony was a sham. There was no ambiguity in either the question or answers during his initial examination.[9] Thus, contrary to his present contention, his deposition testimony does not clarify any ambiguity from his prior testimony. Moreover, Kent's explanation at his deposition does not establish that he was confused or did not understand the questions presented at the earlier examination under oath. Essentially, Kent's explanation for his prior testimony was that he lied at his examination under oath because he had always lied about his boating experience. (*See* Kent's Depo. 31:22 – 33:6.)[10] This explanation does not show and explain con-

9. Kent testified as follows:

> Q: You've owned boats before this one?
> A: No, but my family has had boats before this one.
> Q: This was the first boat that you've owned?
> A: Yes.
> Q: Your family owned boats before that, meaning your immediate family?
> A: Yes, brothers and—mostly.

(Kent EUO 16:7–15.) Later during the examination, he was once again asked about his ownership experience:

> Q: ... [O]n your application, it says "Your experience: As owner," then "As operator," and then the number 30 appears in both boxes. Are you with me?
> A: Yes.
> Q: This was the first boat that you've owned; correct?
> A: Yes.
> Q: Do you have any knowledge as you sit here today of how 30 would appear in that box?
> A: No.

> [Q:] The question ... was as you reviewed this and signed it, would you have felt that the 30 years as an operator was accurate[?]
> A: It was probably overstated somewhat.
> Q: By how much?
> A: Five, ten years. I don't know.
> Q: Same question with respect to 30 years as an owner. Overstated?
> A: Yes, definitely.
> Q: By a lot?
> A: Yes.
> Q: You had never been an owner before this boat; correct?
> A: I had owned this boat prior to this policy.
> Q: Correct. For a couple of years?
> A: Three years.

(Kent EUO 54:24 – 55:10; 56:22 – 57:18.)

10. At his deposition, Kent testified as follows:
> Q: Further down [on the Application], it refers to your experience as owner and

fusion, an honest discrepancy, an honest mistake or any other basis which supports a conclusion that the testimony was not a sham. Therefore, the Court will apply the general rule of the Ninth Circuit and disregard those portions of Kent's deposition ·that contradict his prior sworn testimony. Thus, the Court finds that Kent misrepresented his prior ownership experience in his Application.

Based on Kent's multiple misrepresentations and omissions on the Application, the

Court concludes that Kent violated the duty of disclosure that he owed to Pacific under §§ 1900 and 1904 of the California Insurance Code. Therefore, the Court GRANTS Pacific's request to rescind the insurance policy.[11]

### 2. Kent's Claims Against Pacific.

■ Where an insurer prevails· on its rescission claim, any breach of contract and bad faith counterclaims brought by the insured are necessarily precluded.

> your experience as operator, and "30 years" is placed there. Do you see that?
> A: Yes.
> Q: This is the first boat that you've owned; isn't that true?
> A: No, it's not.
> Q: You've owned boats other than this prior to this?
> A: Yes.
> Q: What boats have you owned?
> A: I've owned a sailboat and an interest with one of my brothers in a day motor boat and ski boat.
> Q: A sailboat, and an interest with your brother in what kind of boat?
> A: The first one was a Challenger. I think it's called a day boat. It's a reasonably large internal engine, V–8, freshwater boat.
> Q: What was the third boat?
> A: I think it was an Anthony, which is more of a ski boat, a little quicker.
> Q: For how long was your ownership history, did it go back 30 years?
> A: As a matter of fact, many people, myself included, find it very hard to assign dates out of memory to things. The only reason I can be reasonably precise with this is I bought the sailboat just after I got out of the army, which was in 1967.
> Q: Now, at your examination under oath, you stated that this was the first boat that you ever owned. Do you remember that?
> A: Yes.
> Q: Why did you state in your examination under oath that this was the first boat that you ever owned?
> A: It's a little embarrassing and hard to explain. I got a lot of respect in Marina Del Rey because this was a little ship. It was a beauty. You could find many boats in Marina Del Rey that were more expensive, but not much nicer. A lot of old salts and guys around there would come around to look at the boat, and I would get a kick out of getting their goats by saying that. It

> was almost a knee-jerk response. I would tell them, "Yeah, this is my first boat."
> Well, it was my first ocean-going boat. They would be amazed, and I would get a little—a little humor out of that. And I think when you asked me, it just—I rolled out the same answer I've been rolling out for years.
> The truth is I've had boats for many years starting in 1967. I can provide witnesses to that. I believe there may even be some public record of it. . . .
> Q: Was it your understanding that your examination under oath was part of an investigation of an insurance claim?
> A: I believed it was more of an investigation—yeah, of the fire, yeah.
> Q: Was it your understanding that you had an obligation to tell the truth?
> A: Yes.
> Q: As you sit here today, did you tell the truth?
> A: I was mistaken in that response regarding ownership of boats.
> Q: Were you intentionally mistaken?
> A: As I explained before, it was just sort of an automatic knee-jerk response to what I usually said in that regard.
> (Kent Depo. 30:8 – 34:6.)

11. The Court notes that Kent appears to argue that Pacific waived its right to rescind the contract by its action. However, "[w]aiver is the intentional relinquishment of a known right." *Lunardi*, 37 Cal.App.4th at 824, 44 Cal.Rptr.2d 56. Thus, "[a]n insurer does not waive its right to rescind a policy on the ground of false representations if it was unaware of the falsity of those representations." *Id.* Kent fails to provide any evidence that Pacific knew that Kent's representations were false.

Because Kent's duty of disclosure disposes of Pacific's rescission claim against Kent, the Court does not reach Pacific's theory that it is entitled to rescission because Kent lied under oath.

*Cigna Prop. & Cas. Ins. Co. v. Polaris Pictures*, 159 F.3d 412, 419 (9th Cir.1998) *cert. denied*, — U.S. ——, 120 S.Ct. 53, 145 L.Ed.2d 46 (1999). Because Pacific has prevailed on its rescission claim, the Court GRANTS summary judgment for Pacific on Kent's counterclaims for breach of contract and bad faith.[12]

### 3. Kent's Claim against BOA.

Similarly, the Court GRANTS summary judgment for BOA on Kent's counterclaims for bad faith and breach of contract.[13]

Kent also asserted negligence and emotional distress claims against BOA. BOA, however, points out that Kent has no evidence to support his claims. Kent, in his opposition, fails to address BOA's argument or present any evidence to support his claim. Thus, the Court GRANTS summary judgment for BOA on all of Kent's counterclaims.

## C. Claims against and by Bank.

### 1. Loss Payee Clause.

■■■■■■ Pacific asks the Court to hold that Bank is merely a loss payee under a "simple loss payee clause" to the insurance policy. Bank, on the other hand, contends that the language in the policy is ambiguous and, therefore it is entitled to be treated as a loss payee under a "standard loss payee clause."[14] Determination of wheth-

er a contract contains a "standard" or a "simple" loss payee clause is a question of law. *Stanford Ranch, Inc. v. Maryland Cas. Co.*, 89 F.3d 618, 624 (9th Cir.1996).

Under a simple loss payee clause, the proceeds of the policy are first paid to a lienholder, as its interest may appear. 4 *Couch on Insurance 3d,* § 65:8 (1995). A lienholder under the simple clause has no greater right of recovery under the policy than that of the insured. *Southwestern Fund. Corp. v. Motors Ins. Corp.*, 59 Cal.2d 91, 96, 28 Cal.Rptr. 161, 378 P.2d 361 (1963).

■■■■ Generally, the phrase "as its interest may appear" indicates that a clause is a "simple loss payee" clause. *Hayward Lumber & Inv. Co. v. Lyders*, 139 Cal.App. 517, 529, 34 P.2d 805 (1934). This phrase, however, is not necessary to find that a clause is a simple clause. *See id.* at 528–29, 34 P.2d 805. Thus, where a clause merely indicates that a loss is payable to a person, the clause is a simple loss payee clause. *Reynolds v. London & Lancashire Fire Ins. Co.*, 128 Cal. 16, 18–19, 60 P. 467 (1900) (finding that phrase "Loss, if any, payable to [mortgagee]" was merely an assignment of the contingent proceeds of the insurance contract); *Wells Fargo Bank Int'l. Corp. v. London Steam–Ship Owners' Mut. Ins. Assoc., Ltd.*, 408 F.Supp. 626, 629 (S.D.N.Y.1976) (finding that phrase 'Loss, if any payable to Wells

**12.** Because the rescission necessarily precludes Kent's claims against Pacific, Pacific's additional arguments on its Motion for Partial Summary Judgment against Kent on the bad faith and punitive damages claims are moot.

**13.** The Court also notes that BOA is not a signatory to the insurance contract between Pacific and Kent. Kent also has failed to present any evidence of the existence of any other contract. Thus, even assuming that the insurance contract had not been rescinded, neither the breach of contract claim nor the bad faith claim is viable. *See Griffin v. Allstate Ins. Co.*, 920 F.Supp. 127, 131 (C.D.Cal.1996).

**14.** Bank also asserts that the Court should deny this motion on the ground that the "lose payee" issue is irrelevant because it is a third

party beneficiary that may enforce the insurance contract regardless of whether it is a standard or simple loss payee. (Bank's Opp. at 6–9.) However, a third party beneficiary can only enforce a contract to the extent that the contracting parties intend to benefit the third party. *Harper v. Wausau Ins. Co.*, 56 Cal.App.4th 1079, 1086–87, 66 Cal.Rptr.2d 64 (1997). The "loss payee" issue addresses the extent to which the contracting parties intended to benefit Bank. Moreover, Bank presents no evidence that Kent and Pacific intended to provide benefits to Bank that differed from those indicated in the insurance contract.

Fargo International, Mortgagee, or order' was a simple loss payee clause).

On the other hand, the "standard loss payee clause" operates as a distinct and separate contract between the insurer and the lienholder. *Couch,* § 65.9. Under the standard clause, the lienholder is protected against loss from any neglect or act of the insured owner. *Id.* at § 65:8.

No California case addresses what language, if any, is needed to establish a standard loss payee clause. However, out-of-state courts that have addressed this issue have found that for a lienholder to receive protection under a standard clause, "some form of language that the insurance with respect to the [lienholder] shall not be invalidated by the [owner's] acts or neglect" must be part of the policy. *Couch,* § 65:48; *See Fred v. Pacific Indemn. Co.,* 53 Haw. 384, 494 P.2d 783, 787 (1972) ("It is evident ... that in order to create a standard or union mortgage clause, it is necessary that the insurance policy, or an endorsement thereto, provide that the loss payable mortgagee's interest is not subject to wrongful or unlawful acts of the insured which would invalidate coverage"); *Toups Marine Transp., Inc. v. Zurich Ins. Co.,* 636 F.Supp. 847, 849, n. 4 (E.D.La.1986). Furthermore, Bank does not point to any case, and we have found none, holding that a clause without language addressing the effect of the owner's actions is nevertheless a standard payee clause. We conclude that California courts would also require a clause addressing the effect of the owner's actions in order to constitute a standard loss payee clause.

The insurance contract at issue states "Loss, if any, payable to Named Insured & Bank of the West." Neither the policy nor the Declaration page elaborates any further on this clause. The contract could be more precise in describing the loss payee clause. After all, it does not contain the "as its interest may appear" language that is usually part of a simple loss payee clause. Nevertheless, neither the policy nor the Declaration page contains any language to the effect that Bank would be protected from any act of Kent. Thus, the policy clearly does not contain language that could be construed as a "standard loss payee" clause. Because it merely indicates who will receive the proceeds, if any, in case of a loss, the "loss payee" clause is a "simple loss payee" clause. *Accord Reynolds,* 128 Cal. at 18–19, 60 P. 467. Therefore, the Court grants Pacific's motion for partial summary judgment.

### 2. Bank's Claims Against Pacific.

Because Bank is a simple loss payee, it can only receive proceeds from the insurance contract to the extent that Kent is entitled to any proceeds. The Court has found that Pacific is entitled to rescind the insurance contract with Kent. Thus, Pacific would appear to owe no liability to either Kent or Bank. Bank, however, argues that it is entitled to assert equitable defenses that would preclude a rescission of the insurance contract from affecting it.

For instance, Bank argues that Pacific waived its right to rescind by failing to properly investigate Kent's insurability. Bank asserts that *Barrera v. State Farm Mut. Auto. Ins. Co.,* 71 Cal.2d 659, 79 Cal.Rptr. 106, 456 P.2d 674 (1969), imposes on Pacific a duty to promptly investigate Kent's insurability. *Barrera* did hold that an automobile insurer had a duty to promptly investigate the insurability of an insured. *Id.* at 663, 79 Cal.Rptr. 106, 456 P.2d 674. However, the duty established in *Barrera* "was compelled by statutory public policy considerations emanating from the automobile Financial Responsibility Law." *American Continental Ins. Co. v. C & Z Timber Co., Inc.,* 195 Cal.App.3d 1271, 1278, 241 Cal.Rptr. 466 (1987). Accordingly, the duty is confined to automobile liability insurance. *Id.* Thus, the duty does not apply to Pacific's marine insurance policy.

Bank also argues that issuing a policy in the face of an incomplete application estopped Pacific from avoiding coverage.

*See Transamerica Premier Ins. Co. v. Miller,* 41 F.3d 438, 442 (9th Cir.1994). Bank's theory, however, ignores that Pacific's rescission is based on misrepresentations. Thus, Kent's policy was rescinded because he affirmatively provided false information, not because he turned in an application with blanks.

Finally, Bank also seems to rely on a promissory estoppel theory. In essence, Bank argues that it detrimentally changed it position based on the promise of insurance. The promise of insurance, however, consisted of the insurance policy issued by Pacific. The Court has found that the policy included only a simple loss payee clause. Thus, Bank fails to present any equitable basis that would allow the Court to ignore the terms of the insurance contract and allow Bank to receive benefits to which Kent is not entitled.

Accordingly, the Court finds that the rescission of the insurance contract applies to Bank. The Court GRANTS summary judgment in favor of Pacific on Bank's breach of contract and bad faith claims.[15]

### 3. Bank's claims against BOA.

The Bank alleges a claim for negligence and negligent misrepresentation against BOA. BOA asserts in its motion that Bank has no evidence to support these claims.

#### a. Negligence claim.

■ Bank's negligence claim is premised on BOA's alleged failure to investigate and underwrite Kent's Application and BOA's alleged failure to effect insurance as indicated to Bank. (Bank's Opp. to BOA at 10.) However, Bank fails to show that BOA was under any obligation to investigate or underwrite Kent's Application to determine whether Kent's representations were false. Bank also fails to point to evidence indicating that BOA did not procure insurance as requested.

15. Because the Court has found that the determination of the loss payee issue is conclusive on Bank's claims against Pacific, Pacific's additional arguments on its Motion for

■ An insurance agent assumes the duties of "reasonable care, diligence, and judgment in procuring the insurance requested by an insured." *Paper Savers, Inc. v. Nacsa,* 51 Cal.App.4th 1090, 1095–96, 59 Cal.Rptr.2d 547 (1996) (quoting *Jones v. Grewe,* 189 Cal.App.3d 950, 954, 234 Cal.Rptr. 717 (1987)). Generally, an insurance agent cannot be held liable for failing to investigate the value of the property sought to be insured. 4 *Couch* § 55:10. Moreover, because of the duty of disclosure codified in Cal.Ins.Code § 1900, an applicant has a legal duty to provide truthful information to an insurer. As such, an agent that relies on the veracity of the statements made by a marine insurance applicant is acting reasonably. *See Cigna Prop. & Cas. Ins. Co. v. Polaris Pict. Corp.,* 159 F.3d 412, 420 (9th Cir. 1998). Thus, BOA's failure to investigate Kent's misrepresentations cannot support Bank's negligence claim.

As to the negligent procuring claim, BOA could be held liable for failing to procure insurance. *See Paper Savers,* 51 Cal.App.4th at 1095–96, 59 Cal.Rptr.2d 547. However, Bank points to no evidence showing that either BOA did not procure the insurance requested by Kent or BOA offered to provide greater protection than that found in the insurance policy at issue. *Compare Paper Savers,* 51 Cal.App.4th at 1098–99, 59 Cal.Rptr.2d 547 and cases cited therein.

Thus, Bank's negligence claims against BOA are untenable.

#### b. Negligent Misrepresentation Claim.

■ A negligent misrepresentation requires an affirmative representation that is false; an implied assertion or representation is not enough. *Diediker v. Peelle Fin. Corp.,* 60 Cal.App.4th 288, 297–98, 70 Cal. Rptr.2d 442 (1997). Here, the only repre-

Partial Summary Judgment against Bank on the bad faith and punitive damages claims are moot.

sentation made to Bank was the transmittal of the policy. However, Bank can point to no statement in the policy that is false. Accordingly, the claim for negligent misrepresentation cannot survive. Therefore, the Court GRANTS summary judgment for BOA on all of Bank's claims.

### V. Conclusion

1. The Court DECLARES that Pacific's insurance policy covering the Portland Rose on the date of its sinking is rescinded and voided *ab initio;*

2. The Court HOLDS that the insurance contract at issue contains a simple loss payee clause that applies to Bank of the West;

3. The Court GRANTS summary judgment in favor of Pacific on all of the counterclaims asserted by Kent and Bank of the West; and

4. The Court GRANTS summary judgment in favor of Boat Owners' Association of the United States on all claims asserted by Kent and Bank of the West.

**SO ORDERED.**