[S. F. No. 4862. In Bank.—June 18, 1909.]

## SIMON CLAYBURGH, Respondent, v. AGRICULTURAL INSURANCE COMPANY OF WATERTOWN, N. Y. (a Corporation), Appellant.

FIRE INSURANCE—FALLING BUILDING CLAUSE—SUBSTANTIAL IMPAIRMENT.—To constitute a falling of a building, within the meaning of a clause of a policy of fire insurance therein providing that if the "building or any part thereof fall, except as the result of fire, all insurance on such building or its contents shall immediately cease," the building must have fallen in whole or in part to such an extent that its integrity as a building was destroyed or substantially impaired.

ID.—WHAT CONSTITUTES SUBSTANTIAL IMPAIRMENT.—Under such a clause, the insurer is not relieved from liability under the policy unless the substantial integrity of the building was impaired to such an extent as to render it unsuitable for use as an entire building, or unless the falling of such parts as did fall exposed the interior of the building or its contents to the inclemency of the weather or rendered the building or its contents more easily subject to ignition by fire, and thereby materially impaired the building as a building.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order refusing a new trial. John Hunt, Judge.

The facts are stated in the opinion of the court.

Goodfellow & Eells, T. C. Coogan, and H. B. M. Miller, for Appellant.

Naphtaly & Freidenrich, for Respondent.

SLOSS, J.—Action to recover six thousand dollars on a policy of fire insurance, covering a building in the city of San Francisco. Upon a trial before a jury, the plaintiff recovered a verdict for the amount claimed. The defendant appeals from the judgment entered upon the verdict, and from an order denying its motion for a new trial.

There was no denial of the fact that the insured building had, on the nineteenth day of April, 1906, been totally destroyed by fire, and that by its destruction plaintiff had suffered damage to an amount exceeding his insurance. The

only defense was that, on the eighteenth day of April, 1906, a part of the building had fallen, as a result of the earthquake occurring on that day. The policy contained this provision, "If a building or any part thereof fall, except as the result of fire, all insurance on such building or its contents shall immediately cease."

The subject of the insurance was a five-story brick building on the southerly line of Geary Street, leased to a firm which occupied the whole of it as an art store. The defendant introduced in evidence a photograph of the building, taken on the morning of April eighteenth, from some point in a structure on the opposite side of the street. This photograph, taken after the occurrence of the earthquake, and before fire had attacked the building, showed that there had been some injury to plaintiff's building. The upper part of the walls had been shaken down to such an extent as to expose to sight the uprights supporting what appeared to be the roof of the building, and to allow a view across the top of the building between these supports. The testimony of witnesses was offered to show that the photograph fairly represented the condition of the building. On behalf of plaintiff there was evidence to the effect that the flat surface over the building, shown on the photograph, was not, in reality, the roof, but was merely a tin deck, built some three or four feet above the roof, and that its sole purpose was to provide an air space over the fifth story, in which the tenants were conducting operations for which they required an even temperature. It was, as explained by one of the members of the firm occupying the premises, "a superstructure that has nothing to do with the building, but was simply put there at our suggestion by the architect when the building was built for us." This witness testified, further, that he had gone through the building after the earthquake, and had found the interior perfectly intact. No part of any wall or of the roof was broken from the fifth floor to the basement. Nothing had fallen except the cornice and a portion of the fire wall, which was located above the roof, to and beyond the tin deck. No part of the interior of the building was exposed to the elements and the tenants "could have gone right on" with their business. The architect who had designed the building testified, as did the witness just referred to, that the construction above the fifth floor,

i. e., the fire deck and the walls surrounding it, was not an essential part of the building.

The court gave to the jury the following instructions: 1. "By the terms of the policy of insurance in this case it is provided that if the insured building or any part thereof fall, except as the result of fire, the insurance thereon immediately ceases. As to what constitutes a falling of the building within the meaning of this clause, I charge you that the meaning of the language is that the building must have fallen in whole or part to such an extent that its integrity as a building was destroyed or substantially impaired.

2. "If you find from the evidence that the building was substantially in its entirety, and not materially impaired after the falling of such parts thereof which the evidence shows to have fallen, then your verdict should be for the plaintiff.

3. "Defendant is not entitled to a verdict in this case unless you find from the evidence that the substantial integrity of the building was impaired to such an extent as to render it unsuitable for use as an entire building, or unless the falling of such parts as you shall find did fall, exposed the interior of the building or its contents to the inclemency of the weather or rendered the building or its contents more easily subject to ignition by fire, and thereby materially impairing the building as a building."

If these instructions correctly defined the clause of the policy relied on, it cannot be doubted that the jury was warranted by the evidence in finding that there had not been such a falling of any part of the building as to terminate the insurance. It was for the jury to pass upon the credibility of the witnesses, and to draw any reasonably permissible inferences from their testimony. The showing made by plaintiff, if accepted as true, furnished a sufficient basis for the conclusion that no part of the building proper had fallen, but that the only damage was to a false roof or superstructure, which did not form an essential or integral portion of the edifice.

We have no doubt that these instructions, taken as a whole, properly interpreted the clause upon which the defense was rested. The language employed in the policy is to be given a reasonable construction, in view of the purposes, as well of the entire contract, as of the particular condition under discussion. The general object of the policy is to indemnify

the insured against loss or damage by fire. The company, agreeing to furnish this indemnity in return for a certain premium, seeks to limit its risks by various provisions. Generally speaking, their purpose is to avoid liability in the event of the occurrence of circumstances which would naturally tend to increase the hazard beyond that which was in the contemplation of the parties when the insurance was effected. The insurer seeks to guard itself against liability in the event that the condition of the insured property should so change that the risk upon such property in its altered condition would presumably not have been assumed for the premium paid. (Cf. *Goorberg* v. *Western Assoc. Co.*, 150 Cal. 510, 515, [119 Am. St. Rep. 246, 89 Pac. 130].) One of these provisions is the "fallen building" clause. The reason for its insertion in a policy is to be found in the knowledge of the fact that a building which has fallen or has suffered the loss of so material a part as to afford a more ready means of access to flames, is more likely to burn than one which is intact. The fall of a trivial or minute part of a building may, however, occur without increasing the hazard in the slightest degree. It is not to be supposed that the parties intended to contract that such fall should avoid the policy. Whether there has been a fall of a part of the building, within the meaning of the policy, will depend upon the extent and character of the portion fallen.

These views are, in substance, in accord with those announced in all the cases in which this clause has received consideration. In *Nelson* v. *Traders' Ins. Co.*, 181 N. Y. 472, [74 N. E. 421], the court said: "The meaning of the clause in question, when reasonably interpreted, is that the insurer is excused from its obligation by either the fall of the building as a structure, or of such a substantial and important part thereof as impairs its usefulness as such, and leaves the remaining part of the building subject to an increased risk of fire." "The falling," it is said in *Home Mut. Ins. Co.* v. *Tomkies*, 30 Tex. Civ. App. 404, 71 S. W. 812; 96 Tex. 187, 71 S. W. 814, "must be of some material or substantial part of the building." (See, also, *London & L. F. I. Co.* v. *Crunk*, 91 Tenn. 376, [23 S. W. 140].)

The instructions given in this case fairly left to the determination of the jury the question of fact in issue, i. e., whether

there had been a fall of a material or substantial part of the building. It is urged that the first instruction above quoted is virtually the same as that declared to be erroneous in *Home etc. Co. v. Tomkies,* 30 Tex. Civ. App. 404, 71 S. W. 812; 96 Tex. 187, 71 S. W. 814. The charge there was that the falling must be of "such an integral part of the building as a whole, as that the falling of the same would destroy the distinctive character of the structure." This was held to require the insurer to show a case in which "the structure could no longer be considered a building, but only debris or ruins." Here, however, the instruction went further. It included in its definition, not only the destruction, but the *substantial impairment* of the integrity of the building. Furthermore, the third instruction so limited and explained the expressions used in the earlier instructions that the charge, as a whole, could not have been understood as declaring the rule denounced in the Tomkies case.

The judgment and the order appealed from are affirmed.

Angellotti, J., Melvin, J., Henshaw, J. and Lorigan, J., concurred.