[S. F. No. 5542. In Bank.—December 14, 1910.]

## O. FOUNTAIN et al., Respondents, v. CONNECTICUT FIRE INSURANCE COMPANY, Appellant.

FIRE INSURANCE—FALLING BUILDING CLAUSE—TERMINATION OF INSURANCE—EVIDENCE.—Where the property insured was contained in a two-story brick building, the fact that, immediately before the fire started, and as the result of an earthquake, the front wall of the building, from the roof down to the second floor, had fallen down, leaving the roof unsupported in front so that the front part of it dropped and rested upon the second floor at the top of the first story, terminates the insurance, under a clause in the policy that "if a building, or any part thereof, fall, except as a result of fire, all insurance by this policy on such building or its contents shall immediately cease." In the present case, the evidence showing the fact of such falling, and that it occurred prior to the starting of the fire, is without conflict.

ID.—INCREASE OF FIRE RISK.—Under such clause of the policy, the question whether the falling of a part of the building increased the fire risk or not is wholly immaterial, provided the part of the building which had fallen at the time the fire started was a material or important part of it.

ID.—AVOIDANCE OF POLICY BY BREACH OF IMMATERIAL PROVISION.—Under section 2611 of the Civil Code, the doctrine that the breach of an immaterial provision of the policy does not avoid it, is not applicable where the policy expressly declares that it shall avoid it.

APPEAL from an order of the Superior Court of Sonoma County refusing a new trial. Thos. C. Denny, Judge.

The facts are stated in the opinion of the court.

A. B. Ware, and T. C. Van Ness, for Appellant.

Thomas J. Geary, for Respondents.

SHAW, J.—This is an action to recover upon a policy of insurance issued by the defendant, covering goods of the plaintiff contained in a two-story brick building situated in the city of Santa Rosa, known as the Shea Building. It had two store rooms on the ground floor, one of which was occupied by Fountain. The second floor was divided into rooms used and occupied for offices and one room which was occupied by

the society of "Eagles" as a lodge room. The defendant appeals from an order denying its motion for a new trial, after a verdict for the plaintiff.

The policy contained the following clause:—

"If a building, or any part thereof, fall, except as a result of fire, all insurance by this policy on such building or its contents shall immediately cease." The building referred to was the Shea Building aforesaid.

Upon the trial it was admitted by the defendant that it was liable to the plaintiffs for the loss to the full amount of the policy ($1,000), "unless it could make good its defense based upon" the above-quoted clause thereof. The fire was on April 18, 1906, and it immediately followed the earthquake which occurred at fifteen minutes after five o'clock in the morning of that day. The evidence introduced by the defendant in support of the defense aforesaid showed that before the fire started the front wall of the Shea Building, from the roof down to the second floor, had fallen down, leaving the roof unsupported in front so that the front part of it dropped and rested upon the second floor at the top of the first story. This was the substance of the testimony of a number of witnesses who saw the building immediately after the earthquake. That this front wall was a substantial and important part of the building and that the falling thereof would immediately terminate the policy by force of this clause, cannot be seriously disputed. The defense was therefore established, and the order must therefore be reversed, unless other evidence raised a substantial conflict on the subject.

We do not think the contention of the plaintiff that there was a conflict on that point can be sustained. The evidence of the defendant's witnesses on the point was clear, direct, positive, and satisfactory. That on behalf of the plaintiff, which it is claimed creates a conflict, is in substance as follows:—

The witness Burris, said that he made an examination of the front and rear of the Shea Building, that the rear did not seem to be damaged and that he did not see any break in the structure of the *lower* walls, nor any breaks in the structure of the Fountain store room. On cross-examination, he said that the "upper story seemed to be shook up quite a little; the windows were thrown out into the street in the debris." Re-

ferring to that and the other buildings included in the same row, he said that the upper stories were "shot up pretty badly and a great deal of brick and awnings and other things thrown down on the sidewalk and out on the street," and that he did not think any of them were clear out and down, but "there would be great chunks out of them," and that they could not have been occupied until repaired. He said nothing about the position of the roof, and apparently was not questioned concerning it. Hahman was in his own store-room in the lower story of the adjoining building half an hour after the earthquake. He entered from the rear. He said the *back* walls of the Shea Building were intact, but he said nothing about the front wall. He said the Shea Building was burning at that time. King, another witness, occupied a store-room in the adjoining building and he entered it from the rear. The front and side of that building were down. He said nothing about the walls of the Shea Building. Hoffer had an office in the Shea Building over the store-room adjoining that occupied by Fountain. He went into his office ten or fifteen minutes after the earthquake. He said the side walls of the second story were standing on each side of his office, that the east wall of the Shea Building was up as far as the roof and the roof had slid over on to the front—"it kind of fell out that way and sort of dropped down in front" over his office. On cross-examination he said the front walls where he occupied were out, that Dr. Mallory's office was over Fountain's store and that Mallory's office was out just like his. This evidence is wholly insufficient to disprove the contention that the part of the walls which had fallen was not an important and material part of the building. The witness most favorable to the plaintiff was Mr. Burris and his testimony alone shows that a material part of the building had fallen. Other evidence established the fact that the second story had rather large bay windows in front, and these windows, he says, had fallen out into the street. And while he did not think that any of the upper stories in that row were clear out and down, they had "great chunks out of them," and the buildings could not be occupied until repaired. Clearly this was sufficient to constitute the falling of a material and substantial part of the building.

With regard to the time when the fire started, the theory

advanced is that, although there was no direct evidence on the subject, there were circumstances sufficient to justify the inference that the first effect of the earthquake may possibly have been to break some charged electric light wire in the building, so as to cause fire therefrom to begin before the shake had caused the wall or window to fall.  We have not given the defendant's evidence on this point in detail, but in substance it satisfactorily established the fact that the fire in the Shea Building was caused after the earthquake, by fire which originated in some other building or buildings in the same row and did not reach the Shea Building until from fifteen to thirty minutes afterwards.  There was clear proof that very soon afterward fires were observed in two of these near-by buildings and that there was none at that time in the Shea Building.  A witness for plaintiff said that about a minute after the earthquake, from his house seven blocks away, he saw a column of smoke seventy-five to one hundred feet high and half as large as the courtroom at Santa Rosa, arising from the neighborhood of the Fountain store, that when he came down town he located that fire and it was some where in the rear of the Shea Building, or another building not adjoining, but that he did not know the exact spot where it was nor within forty feet of where it was; that he did not look to see what was burning.  This vague and uncertain evidence is not sufficient to constitute a substantial contradiction of the other witnesses, some of them produced by the plaintiffs, who testified either directly that the Shea Building was not on fire at the time they reached it, or saw it, after the earthquake, or to circumstances about which they could not well be mistaken and which if true would render it extremely improbable, if not impossible, that the building could have begun to burn until at least fifteen minutes after the earthquake and then only from fire communicated from the adjoining buildings.  It thus being established that the building was not on fire immediately after the quake there is no basis for the supposed inference that the fire therein may have begun before the wall fell.  The defense was established, the verdict was contrary to the evidence, and the new trial should have been granted for that reason.

One of the instructions was as follows:—

"It is not sufficient for defendant, in order to avoid its

policy, to establish the fact that the building described in the policy in suit had, before it began to burn, suffered some injury, or that any part of the walls of said building had fallen before the contents of the building were destroyed by fire, to avoid its policy herein; but the defendant must establish by a preponderance of evidence that such a material portion of the building had fallen before the fire started as would have increased the fire risk which defendant assumed by its policy on such building and its contents. That if the evidence does not establish the falling of such a material portion of the building, then I instruct you to find for the plaintiff."

In anticipation of a new trial it is proper to determine whether or not this instruction is correct.

Section 2611 of the Civil Code declares that "A policy may declare that a violation of specified provisions thereof shall avoid it, otherwise the breach of an immaterial provision does not avoid the policy." We are bound by this statutory declaration of the law, whether it accords with justice or not. The clause of the policy on this subject is in substance the same as this provision of the code. To declare that, upon the happening of a given event, "all insurance shall immediately cease," is but another way of saying that, if the event happens, the obligation created by the policy shall become void. The effect of this section of the code, in connection with the fallen-building provision of the policy, is that the question whether the falling of a part of the building increased the fire risk or not, is wholly immaterial, provided the part of the building which had fallen at the time the fire started was a material or important part of it. The instruction was erroneous in so far as it directed the jury that the effect of the falling of the part of the building must have been to increase the fire risk and that, if it did not, the defendant would be liable. The parties had the legal right to make the contract that in such an event there should be no necessity for any inquiry as to the increase of risk therefrom and that the mere event should at once terminate the insurance, and having done so, the defendant is lawfully entitled to the advantage thereof. The instruction was imperative in its direction to the jury, and although other instructions given omitted the element of increase of risk they merely caused a conflict and did not cure the error. It is impossible to say which instruction the jury obeyed.

The decision of the court in *Bastian* v. *British A. A. Co.,* 143 Cal. 287, [77 Pac. 63], was in substance based upon the principles above stated. The doctrine that the breach of an immaterial provision of the policy does not avoid it, is not applicable, under the code, where the policy expressly declares that it shall avoid it. In *Clayburgh* v. *Agricultural Ins. Co.,* 155 Cal. 708, [102 Pac. 812], we were discussing the question of what was a sufficiently important "part" of a building, under the fallen-building clause of a policy, to make the policy void if such part should fall. The instruction there considered was passed as substantially correct in effect, and this was put upon the ground, that, although it did refer to the increase of the fire risk as a result of the falling of the part of the building, it did not, when taken as a whole, declare that such increase must occur in order to avoid the policy, but only that the part fallen must be important enough to materially impair the usefulness of the building. In substance that decision was that to constitute an infraction of the fallen-building clause, some material or substantial part of the building, as distinguished from a trivial, minute, and unimportant part thereof, must have fallen. The question of a consequent increase of risk was not held to be essential to the avoidance of the policy, if the part which had fallen was a material and important part of the building.

The question involved in this instruction is of no practical importance upon a new trial, unless the evidence should be more favorable to the plaintiff than that given upon the trial under consideration. For there can be no doubt that the falling of even so much of the building as Burris testified had fallen, would increase the risk of fire. It is proper to remark further that the evidence does not present the question whether or not the defendant would be liable if the fire had started in the building before any part of it fell, and before it reached plaintiff's goods a material part of the building had fallen as a result of the earthquake and not as a result of the fire.

Other questions are discussed in the briefs in this case, but the probability that they will arise upon a new trial is so remote that we do not deem it necessary to consider them.

The order denying a new trial is reversed.

Angellotti, J., Sloss, J., Lorigan, J., Henshaw, J., and Melvin, J., concurred.