**CERTAIN UNDERWRITERS AT LLOYD'S, Plaintiff–Appellee,**

v.

**Ted MONTFORD, aka Theodore F. Montford, Defendant–Appellant.**

**No. 93–56418.**

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 10, 1995 *.

Decided April 4, 1995.

---

9. For purposes of this appeal, it is undisputed that GAAP utilize a blended rate to determine interest costs based on group indebtedness.

* The panel finds this case appropriate for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34–4.

220

Steven A. Fabbro, Brown, Monzione, Fabbro, Zakaria and Scarlett, San Francisco, CA, for defendant-appellant.

Sam D. Delich and James B. Nebel, Flynn, Delich & Wise, San Francisco, CA, for plaintiff-appellee.

Before: BEEZER and NOONAN, Jr., Circuit Judges, EZRA, District Judge.[**]

DAVID ALAN EZRA, District Judge:

Ted Montford appeals the district court's award of summary judgment to Certain Underwriters at Lloyd's. The district judge found that Montford's misrepresentations and omissions in obtaining the insurance on his vessel and his violation of the cruising warranty rendered the policy void. We affirm.

## I. Background

Appellant Ted Montford ("Montford") initially sought an insurance policy from Appellee Certain Underwriters at Lloyd's ("Underwriters") in 1987, after Montford purchased a vessel he later re-named the "Courtship II." Montford dealt through his longtime insurance agent, Richard Ramseyer. Underwriters' agent, Hull & Co., Inc., issued an insurance policy for the "Courtship II" in November, 1987, and renewed the policy for one-year periods in November of 1988, 1989, and 1990. The same 1987 application was used to obtain the original policy as well as all renewal policies.

The insured value for the 1990–1991 term was initially set at $925,000, and was increased to $1,050,000 on July 12, 1991. Nine days later, the "Courtship II" disappeared from its berth in Golfito, Costa Rica. The vessel has not been found. Montford filed a claim with Underwriters for the full value of the vessel's hull coverage, $1,050,000. Un-

derwriters responded by filing this lawsuit, seeking a declaration that the insurance policy was void.

On the initial 1987 application, Montford had (through his insurance agent) represented that (a) he had no insurance losses within the previous five years; (b) the purchase price for the vessel was $925,000; and (c) the vessel was built in 1983. The policies issued for the "Courtship II" provided that "[t]he entire certificate shall be void from inception ... if the insured, or his agent, has concealed or misrepresented in writing, or otherwise, any material facts or circumstances concerning this insurance or the subject thereof." Discovery in this lawsuit revealed that (a) Montford had a prior insured total loss on a vessel named the "Pamela Ann" in 1985; (b) Montford paid less than $500,000 for the "Courtship II"; and (c) the "Courtship II"'s hull was laid and the vessel was in use in 1980.

The "Courtship II"'s insurance policy also contained a so-called "cruising warranty," specifically excluding Colombian and Nicaraguan waters. The policy expressly provided that a breach of the cruising warranty will "immediately terminate (coverage) and the policy or certificate of insurance will be null and void." The captain of the "Courtship II" admitted the vessel cruised in waters near Colombia one month before the boat disappeared.

The district judge on July 12, 1993 granted Underwriters' motion for summary judgment on two independent grounds, holding that: (1) the "Courtship II"'s insurance policy should be declared void *ab initio* because of Montford's misrepresentations and omissions in procuring the policy; and (2) the policy should be declared void because the vessel cruised in Colombian waters, directly contravening the terms of the policy.

## II. Standards of Review

A grant of summary judgment is reviewed de novo. *Jones v. Union Pacific*

[**] The Honorable David Alan Ezra, United States District Judge for the District of Hawaii, sitting

by designation.

*R.R.,* 968 F.2d 937, 940 (9th Cir.1992). Our review is governed by the same standard used by the district court under Fed.R.Civ.P. 56(c). *Darring v. Kincheloe,* 783 F.2d 874, 876 (9th Cir.1986).

## III. Discussion

### A. *Omissions & Misrepresentations in Insurance Application*

#### 1. Misrepresentation of Prior Loss Record

■ On its face, Montford's misrepresentation regarding his prior loss record violates Cal.Ins.Code § 1900.[1] Under this so-called "uttermost good faith" duty to disclose, the insured is "bound, even if not asked, to reveal every fact within his/her knowledge that is material to the risk." *Washington Int'l Ins. Co. v. Mellone,* 773 F.Supp. 189, 191 (C.D.Cal.1990) (quoting *Hartford Ins. Co. v. Garvey,* 1989 A.M.C. 652, 658 (N.D.Cal.1989)). California marine insurance law permits an insurer to rescind the insurance contract if the insured makes any intentionally false representations, Cal. Ins.Code § 1904, and the insurance certificate here expressly declares that any fraud, concealment or misrepresentation of material facts will void the policy.

■ Regarding Underwriters' "constructive knowledge" of Montford's prior loss record, Montford's misrepresentation in 1987 is not mitigated by the fact he may have told the truth on an application to Underwriters' agent two years earlier. Underwriters' agent relied solely on the 1987 application in placing the insurance. Section 335 of the California Insurance Code, concerning facts "equally" open to inquiry by either party, does not override section 1900's mandate of complete disclosure by marine insurance applicants.

■ An insurance applicant's loss history is a fact material to the risk. *See Wilson v. Western Nat'l Life Insurance Co.,* 235 Cal.App.3d 981, 993, 1 Cal.Rptr.2d 157, 164 (1991). Underwriters' agent stated, and Montford has not disputed, that the agent would not have placed the insurance if Montford had revealed the truth regarding his loss record. The district judge thus did not err in declaring the policy void *ab initio* on this basis.

#### 2. Misrepresentation of Purchase Price

■ We reject Montford's argument that inserting the "present market value" of a vessel, rather than the actual purchase price, is an acceptable industry practice in applying for marine insurance *when the application specifically asks for the purchase price.* Under these circumstances, the vessel's purchase price is unquestionably a fact material to the risk. Underwriters were entitled to void the policy based on Montford's material misrepresentation, and the district judge did not err in granting summary judgment on this ground.

#### 3. Age of Vessel

■ Montford contends there was no misrepresentation as to the age of the "Courtship II" because the vessel was actually "custom finished" in 1983 even though the hull was laid in 1980. However, Montford's own testimony established, among other things, that Montford had a survey showing the vessel was complete and afloat in 1980, and a Certificate of Documentation showed the vessel was built in 1980. Based on this record, the district judge did not err in finding there was no genuine issue of material fact as to whether Montford materially misrepresented the year in which the vessel was built. Montford does not dispute that the age of a vessel is a fact material to the risk of a marine insurance policy. Particularly when taken together with the omissions and misrepresentations detailed above, this misrep-

---

**1.** The parties agreed to apply California law to this action. As California law and federal admiralty law are materially the same on the issues raised in this appeal, we shall also apply California law. *See Reliance Ins. Co. v. McGrath,* 671 F.Supp. 669, 675 (N.D.Cal.1987) (applying California law to marine insurance contract when federal admiralty law and California law reach the same result).

resentation entitles Underwriters to void the policy from inception.

### B. *Violation of Cruising Warranty*

Montford's argument that the breach of the cruising warranty was immaterial because the actual loss occurred while the vessel was in Costa Rica and not Colombia fails as a matter of law. Cal.Ins.Code § 448. For nearly a century, California courts have held that the breach of even an immaterial warranty will void a policy "where the policy expressly declares that it shall avoid it." *Fountain v. Connecticut Fire Ins. Co.*, 158 Cal. 760, 765, 112 P. 546, 549 (1910).

In this case, the policy expressly states that a breach of the cruising warranty will render the policy "null and void." The consequences of a breach are not buried in a maze of small type, but rather are clearly set forth in a separate paragraph on policy Endorsement No. 1. The district judge did not err in granting summary judgment on this additional, independent ground of breach of warranty.

For these reasons, we affirm the decision of the district court.

**AFFIRMED.**