**NEW HAMPSHIRE INSURANCE COMPANY, Plaintiff,**

v.

**C'EST MOI, INC., Defendant.**

**No. SA CV 05–243 DOC RNB.**

United States District Court,
C.D. California.

Dec. 6, 2005.

Jared A. Washkowitz, Neil S. Lerner, Sands & Lerner, Los Angeles, CA, for Plaintiff.

Robert G. Dyer, Robert G. Dyer Law Offices, San Diego, CA, for Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

CARTER, District Judge.

Before the Court are Plaintiff New Hampshire Insurance Company's ("NHIC") Motion for Summary Judgment ("Plaintiff's Motion") and Defendant C'Est Moi, Inc.'s ("CMI") Motion for Partial Summary Judgment ("Defendant's Motion"). After considering the moving, opposing and replying papers, and the oral argument of both parties, for the reasons below, the Court hereby GRANTS Plaintiff's Motion and DENIES Defendant's Motion.

## I. BACKGROUND

Plaintiff NHIC is a Pennsylvania corporation with its principal place of business in New York. Defendant CMI is a Delaware corporation with its principal place of business in Newport Beach, California. CMI owns a fifty-six foot boat, the "C'Est Moi," built in 1980. In 1986, Lawrence O'Rourke acquired CMI and the C'Est Moi boat, which is the sole asset of CMI. O'Rourke is the sole shareholder of CMI. This case concerns the marine insurance policy issued by NHIC to CMI insuring the C'Est Moi.

In 1992, a fire occurred aboard the C'Est Moi, resulting in a total loss of the boat. The insurer, Washington International Insurance ("Washington International"), paid the insured value of the C'Est Moi, $450,000, less the $50,000 deductible. O'Rourke subsequently purchased the aluminum hull back from Washington International for $50,000, and repaid to Horizon Credit Corporation a loan of $179,861.48 that had been used to purchase the boat. In 1998, O'Rourke began rebuilding the boat.

On August 17, 2001, CMI submitted a "Pleasure Yacht Application" ("Application") to NHIC for the purpose of obtaining marine insurance on the C'Est Moi. CMI submitted the Application to NHIC through Hayden Insurance Services ("Hayden Insurance"), and its agent, Chip Bishop. CMI's disclosures on the Application included the following:

(1) Date purchased and price: "1986;" "450,000 + +"

(2) Builder/Manufacturer: "Poole Chaffee"

(3) Loss History: "1992 Washington Mutual $450,000 (see attached)"

(4) Prior Owned: "57' Stevens"

(5) Present Marine Insurer: "Wash Int'"

Compl. Ex. A. As required by the Application, CMI attached marine surveyor Thomas Bell's survey of the boat, dated July 20, 2001 ("Bell Survey"). The Bell Survey stated that the C'Est Moi was a work in progress that was 65% completed, and that had a market value of $670,000. Compl. Ex. B. It stated that an addendum survey would be submitted as work progressed. *Id.*

After receiving the Application, NHIC issued a one-year Yacht Policy, No. YM–341–84–84 ("Policy"), to CMI, providing hull coverage on the C'est Moi in the amount of $670,000. The Policy included the following provisions:

(1) "CONCEALMENT OR MISREP-RESENTATION: Any relevant coverage(s) shall be voided if you intentionally conceal or misrepresent any material fact or circumstance relating to this insurance, or your insurance application, before or after a loss."

(2) "COOPERATION WITH US: In the event of a loss covered by this policy you must cooperate with us fully."

(3) "Hidden Defect: We shall pay for indirect physical loss of damage caused by any hidden defect in the machinery, the hull or other defective part."

Compl. Ex. C. The Policy became effective on August 17, 2001.

On January 21, 2002, NHIC received a request from CMI through Hayden Insurance to increase hull coverage to $1,075,000, based on an attached "Addendum to Survey," dated January 13, 2002. The Addendum stated that Bell conducted a survey on January 11, 2002, and found that the C'est Moi was 80% complete with a market value of $1,075,000. Compl. Ex. E. Upon receiving the request, NHIC increased the hull coverage to $1,075,000, effective February 6, 2002. Decl. of Roderick H. Clingman ¶ 6. Subsequently, the Policy was renewed for one year terms on August 17, 2002, August 17, 2003, and August 17, 2004.

On October 29, 2004, the C'est Moi took on water and sank in calm waters while moored at a private dock in Newport Beach, California. CMI subsequently filed a claim on the Policy, and NHIC assigned marine surveyor Peter Britton to investigate the claim on November 1, 2004. Britton determined that the back-siphoning of seawater through the boat's automatic bilge system caused the boat to flood and sink. Loss Update/Status Report of Peter Britton 3. In February 2005, NHIC requested that CMI allow another marine surveyor to investigate the C'Est Moi, but CMI refused the request.

While investigating whether to pay on the Policy, and during the course of discovery in this case, NHIC has discovered facts that it alleges were either not disclosed or misrepresented by CMI on the Application. Specifically:

(1) A Buyer's Closing Statement indicates that O'Rourke purchased the C'Est Moi for $292,001. Decl. of Neil S. Lerner Ex. J;

(2) O'Rourke stated in his Examination Under Oath ("EUO"), taken December 23, 2004, that Fred Gledhill built the C'Est Moi. *Id.* Ex. A at 9:11–12;

(3) Marine surveyor Kells Christian surveyed the C'Est Moi, and in a letter to O'Rourke dated February 8, 2001, stated that the value of the boat at that time was $250,000, with a target value of $500,000. Compl. Ex. H.

(4) O'Rourke once owned a 30–foot Charger boat that caught fire and had a loss in 1989 involving damage to a propeller. Lerner Decl. Ex. A, H (Def.'s Resps. to Pl.'s Special Interrogs.).

(5) When CMI applied for the Policy in August 2001, the C'Est Moi was not insured. Decl. of O'Rourke in Opp'n to Pl.'s Mot. ¶ 15.

On March 11, 2005, NHIC informed CMI that it would not pay on the Policy. Compl. Ex. I.

On March 14, 2005, NHIC filed in this Court its Complaint for Rescission, Voiding, Denial of Insurance Benefits, and Declaratory Relief as to a Policy of Marine Insurance ("Complaint"). The Claim alleged seven claims for relief: (1) rescission of the Policy based on misrepresentation and concealment under maritime law; (2) rescission of the Policy based on fraudulent valuation under California insurance law; (3) voiding of the Policy based on breach of implied warranty of seaworthiness; (4) voiding of the Policy pursuant to Policy provision concerning intentional concealment or misrepresentation; (5) voiding of the Policy pursuant to Policy provision concerning fortuitous loss; (6) voiding of the Policy pursuant to Policy provision concerning cooperation of insured; and (7) declaratory relief determining the parties' respective rights under the Policy. NHIC has moved for summary judgment on all claims; CMI has moved for partial summary judgment as to all claims, reserving for trial only that portion of the declaratory relief claim concerning the amount of money NHIC owes to CMI under the Policy.

## II. SUMMARY JUDGMENT LEGAL STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c).

The Court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). However, the existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; to defeat the motion, the non-moving party must affirmatively set forth facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. *Id.* at 256, 106 S.Ct. at 2514. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence of a genuine issue of material fact from the non-moving party. *Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir.1990). The moving party need not disprove the other party's case. *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986).

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

## III. DISCUSSION

### A. Rescission for Misrepresentation and Concealment under Maritime Law

Plaintiff NHIC and Defendant CMI have each moved for summary judgment on NHIC's claim of rescission of the Policy based on misrepresentation and concealment under maritime law. As discussed below, the parties largely do not dispute the facts at issue; instead, they disagree about whether maritime law or the Concealment or Misrepresentation provision in the Policy should govern this claim.

█ A marine insurance contract is governed by maritime law and thus invokes federal admiralty jurisdiction. *Kossick v. United Fruit Co.,* 365 U.S. 731, 735, 81 S.Ct. 886, 890, 6 L.Ed.2d 56 (1961). However, given the long history of state regulation of marine insurance contracts, state maritime insurance law governs the interpretation of a marine insurance contract in the absence of a judicially established federal maritime rule or federal statute. *Wil-*

*burn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 313–14, 75 S.Ct. 368, 370, 99 L.Ed. 337 (1955). California law and federal admiralty law are "materially the same" on the issue of rescission for misrepresentation or concealment; therefore, the Court will interpret the Policy under California law. *Certain Underwriters at Lloyd's v. Montford,* 52 F.3d 219, 222 n. 1 (9th Cir.1995).

█ Under both federal and California maritime law, an applicant for marine insurance is bound by the duty of *uberrimae fidei,* or "uttermost good faith," to reveal, even if not asked, every fact within his knowledge that is material to the risk. *Cigna Prop. & Cas. Ins. Co. v. Polaris Pictures Corp.,* 159 F.3d 412, 420 (9th Cir. 1998); *Montford,* 52 F.3d at 222. This duty of "uttermost good faith" is codified by California statute, which requires an applicant for marine insurance to disclose "the exact and whole truth in relation to all matters that [the applicant] represents or, upon inquiry assumes to disclose." Cal. Ins.Code § 1900(b). If an insured makes a representation that is "intentionally false in any respect, whether material or immaterial," an insurer may rescind the marine insurance contract. Cal. Ins.Code § 1904. Thus, an insurer may rescind a marine insurance policy "if it can show either intentional misrepresentation of a fact, regardless of materiality, or nondisclosure of a fact material to the risk, regardless of intent." *Polaris Pictures,* 159 F.3d at 420 (quoting *Washington Int'l Ins. Co. v. Mellone,* 773 F.Supp. 189, 191 (C.D.Cal.1990)).

#### 1. Applicability of *Uberrimae Fidei* Duty in Light of Policy Provision

█ CMI contends that the duty of *uberrimae fidei* is inapplicable because the parties to the Policy have contracted around this maritime law doctrine. CMI contends that the Concealment or Mis-

representation provision of the Policy contracts around the doctrine. The Concealment or Misrepresentation provision provides that "[a]ny relevant coverage(s) shall be voided if [CMI] intentionally conceal[s] or misrepresents any material fact or circumstance relating to this insurance, or [CMI's] insurance Application, before or after a loss." Policy, General Conditions and Exclusions ¶ 10. Thus, CMI argues that NHIC is entitled to rescission of the contract only for intentional concealment or intentional misrepresentation of material facts, and that NHIC is not entitled to rescission for intentional misrepresentation of non-material facts or unintentional nondisclosure of material facts.

CMI cites *King v. Allstate Insurance Co.*, 906 F.2d 1537 (11th Cir.1990), in support of its assertion that parties to a marine insurance contract are free to contract around the duty of *uberrimae fidei*. In that case, the Eleventh Circuit found that language in the insurance policy voiding the policy for intentional concealment or misrepresentation of material facts represented the parties' decision to contract around the duty of *uberrimae fidei*. 906 F.2d at 1542. However, while the Eleventh Circuit recognized that parties to an insurance contract are generally free to contract around state or federal law, the court also stated that parties are free to do so only "so long as there is nothing void as to public policy or statutory law about such a contract." *Id.* at 1540. Unlike in the *King* case, here, the California legislature has explicitly codified the doctrine of *uberrimae fidei* in the insurance code. *See* Cal. Ins Code § 1900(b). Thus, a contract provision purporting to contract around that doctrine would be void as to California statutory law. CMI cites no California cases or Ninth Circuit cases that have addressed the specific issue of whether a party to a marine insurance contract may

contract around the codification of the duty of *uberrimae fidei*. At oral argument, CMI's counsel submitted that this lack of case law weighs against the applicability of the duty in this case. However, the Court is reluctant to counter the express codification of this duty by the California legislature. Therefore, given the codification of this well-established maritime law duty, the Court finds that the Policy provision does not contract around the duty.

Therefore, CMI is bound by the duty of *uberrimae fidei*, and NHIC may rescind the Policy "if it can show either intentional misrepresentation of a fact, regardless of materiality, or nondisclosure of a fact material to the risk, regardless of intent." *Polaris Pictures*, 159 F.3d at 420.

**2. Misrepresentation or Concealment**

NHIC contends that CMI misrepresented or concealed material facts in its Application for marine insurance, and thus, regardless of CMI's intent, NHIC may rescind the Policy. NHIC argues that CMI misrepresented or concealed the following facts on its Application: (1) the purchase price of the C'Est Moi; (2) prior losses; (3) the present insurer of the boat; (4) prior marine surveys valuating the C'Est Moi at a lower price than the Bell Survey; (5) the manufacturer of the boat; and (6) prior boat ownership. The Court finds as a matter of law that at least three of these facts are material and were misrepresented or concealed by CMI on the Application.

**i. Purchase Price**

 Materiality of facts is determined "solely by the probable and reasonable influence of the facts upon the party to whom the communication is due." *C.N.R. Atkin*, 137 F.3d at 1171 (quoting Cal. Ins.

Code § 334). The effect on the actual insurer, not some reasonable insurer, is the focus of the inquiry. *Id.* (quoting *Imperial Cas. & Indem. Co. v. Sogomonian,* 198 Cal.App.3d 169, 243 Cal.Rptr. 639, 644 (1988)). A marine insurer's specific inquiry about a fact is usually sufficient to establish materiality as a matter of law. *Pac. Ins. Co. v. Kent,* 120 F.Supp.2d 1205, 1212 (C.D.Cal.2000) (citing *Merced County Mut. Fire Ins. Co. v. California,* 233 Cal. App.3d 765, 772, 284 Cal.Rptr. 680 (1991)). In this case, the Application specifically asked about the purchase price of the C'Est Moi. Compl. Ex. A. When an application specifically asks for the purchase price of a boat, the purchase price is "unquestionably a fact material to the risk." *Montford,* 52 F.3d at 222.

In response to the Application's inquiry about purchase price, CMI represented that the price was "450,000 + +" dollars. Compl. Ex. A. However, the purchase price of the C'Est Moi was $292,001. Lerner Decl. Ex. J. CMI does not dispute that the incorrect purchase price was written on the Application; rather, it argues that the notation "450,000 + +" represented the amount of money O'Rourke had spent trying to rebuild the boat, and that this figure was intended to supply NHIC with information necessary to assess the risk. CMI offers the declaration of Robert Ray, who states that the most important factor in the underwriting of a boat is the current value of the boat, not the original purchase price of a boat that is being rebuilt after a total loss. Decl. of Robert Ray ¶ 48. However, the actual underwriter of the Policy, Clingman, relied upon the purchase price as stated in Application. Clingman Decl. ¶¶ 8, 11. Thus, the purchase price was a material fact because the Application specifically requested such information, and because Clingman actually relied upon the information. *See Montford,* 52 F.3d at 222 (holding that a marine insurer

was entitled to void a policy under the duty of *uberrimae fidei* where the insurance applicant represented the "present market value" of a vessel when the applicant specifically asked for the purchase price). Therefore O'Rourke's misrepresentation of the purchase price breaches the duty of *uberrimae fidei,* and NHIC may rescind the Policy based on this misrepresentation of a material fact.

### ii. Prior Losses

■ "An insurance applicant's loss history is a fact material to the risk." *Id.; see Polaris,* 159 F.3d at 420 (finding that failure to disclose loss history was a failure to disclose a fact material to the risk). The Application requested loss history, and did not limit the inquiry to a finite number of years or a particular vessel. Compl. Ex. A. While CMI disclosed the 1992 fire loss of the C'Est Moi, it did not disclose two other losses, including a fire on O'Rourke's 30-foot Charger boat. Lerner Decl. Ex. A. O'Rourke claims that he did not remember the fire on the Charger boat because it was "so minor ... and occurred so long ago ..." Decl. of O'Rourke in Opp'n to Pl.'s Mot. ¶ 12. However, since loss history is a material fact as a matter of law, *Montford,* 52 F.3d at 222, concealment of this material fact breaches the duty of *uberrimae fidei,* regardless of intent. *Polaris Pictures,* 159 F.3d at 420. Therefore, NHIC may rescind the Policy based on this misrepresentation of a material fact.

### iii. Present Insurer

■ On the Application, CMI represented that its "present marine insurer" was "Wash Int'," which referred to Washington International, the insurer who paid on the 1992 fire loss of the C'Est Moi. Compl. Ex. A. However, at the time CMI filled out the Application, it had no marine insurance

on the C'Est Moi. Decl. of O'Rourke in Opp'n to Pl.'s Mot. ¶ 15. Since the Application specifically asked for the boat's present insurer, such information was material as a matter of law. *See Pac. Ins.*, 120 F.Supp.2d at 1212. Moreover, the underwriter, Clingman, considered this information about a present insurer "important since it was disclosed ... that Washington International had paid off on a large loss in 1992 on this vessel." Clingman Decl. ¶ 20. CMI argues in its papers and at oral argument that no underwriter would have believed that a boat such as the C'Est Moi would have insurance after a prior total loss. However, CMI's statement in the Application that it its *"present* marine insurer"' was Washington International clearly expressly stated otherwise. Compl. Ex. A (emphasis added). Based on CMI's concealment of this material fact, NHIC may rescind the Policy.

Due to CMI's concealment of the purchase price, prior losses and the present insurer of the C'Est Moi, the Court finds that there is no genuine or disputed issue of material fact concerning whether CMI breached the duty of *uberrimae fidei,* and that NHIC is entitled to judgment as a matter of law on its claim of rescission for misrepresentation or concealment. Based on these undisputed facts, CMI is not entitled to summary judgment on this claim.

### B. Other Claims for Relief

NHIC's other claims seek essentially the same relief as NHIC's rescission claim based on misrepresentation or concealment: namely, nullification of the Policy.[1] Having granted summary judgment of re-

scission based on misrepresentation or concealment under maritime law, the Court need not address the other claims for rescission and voiding of the Policy on which the parties have moved for summary judgment. The Court is also aware of the pending state case in Orange County Superior Court, captioned *C'est Moi, Inc. and Lawrence O'Rourke v. New Hampshire Insurance Co., Peter Britton and Does 1 to 50,* Case No. 05CC04273. On September 23, 2005, the Superior Court stayed that case pending resolution of NHIC's rescission action presently before this Court. Having granted summary judgment for rescission of the Policy based on misrepresentation or concealment under maritime law, the Court declines to address summary judgment on the other claims in the alternative, which may have preclusive effect in the state court action.

### IV. DISPOSITION

For the reasons set forth above, the Court hereby GRANTS NHIC's motion for summary judgment on NHIC's claim for rescission of the Policy based on misrepresentation or concealment under maritime law, and DENIES CMI's motion for summary judgment on the claim.

IT IS SO ORDERED.

---

1. ·As mentioned above, NHIC's other claims for relief are: rescission of the Policy based on fraudulent valuation under California insurance law; voiding of the Policy based on breach of implied warranty of seaworthiness; voiding of the Policy pursuant to Policy provision concerning intentional concealment or misrepresentation; voiding of the Policy pursuant to Policy provision concerning fortuitous loss; voiding of the Policy pursuant to Policy provision concerning cooperation of insured; and declaratory relief determining the parties' respective rights under the Policy.