**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NEW HAMPSHIRE INSURANCE CO.,
        *Plaintiff-Appellee,*

    v.

C'EST MOI, INC.,
        *Defendant-Appellant.*

No. 06-55031

D.C. No.
CV-05-00243-DOC

OPINION

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted
August 9, 2007—Pasadena, California

Filed March 20, 2008

Before: Alex Kozinski, Chief Judge, Johnnie B. Rawlinson,
Circuit Judge, and Miriam Goldman Cedarbaum,*
Senior District Judge.

Opinion by Chief Judge Kozinski

---

*The Honorable Miriam Goldman Cedarbaum, Senior United States
District Judge for the Southern District of New York, sitting by designa-
tion.

## COUNSEL

Robert G. Dyer, Law Offices of Robert G. Dyer, San Diego, California, for the defendant-appellant.

Neil S. Lerner and Benjamin A. Shapiro, Sands Lerner, Los Angeles, California, for the plaintiff-appellee.

## OPINION

KOZINSKI, Chief Judge:

We consider the doctrine that's on everyone's lips: *uberrimae fidei*.

### Facts

Lawrence O'Rourke purchased C'Est Moi, Inc. (C'Est Moi) in 1986, and became its president and sole shareholder. As part of this purchase, O'Rourke acquired a yacht owned by C'Est Moi, and subsequently insured it through Washington International Insurance Co. (Washington International). A fire destroyed the yacht in 1992, and Washington International paid O'Rourke $450,000 for the loss. O'Rourke reacquired the yacht from Washington International at salvage, paid off a loan and began restoring it. Washington International stopped insuring the yacht after the fire, and it remained uninsured until 2001, when C'Est Moi obtained insurance from New Hampshire Insurance Company (NHIC).

In 2004, the yacht sank in calm waters while docked at Newport Beach, California. O'Rourke, on behalf of C'Est Moi, filed an insurance claim. NHIC investigated and determined that the likely cause was a malfunctioning bilge pump. NHIC then sued C'Est Moi to rescind the insurance policy, and the district court granted summary judgment in favor of

NHIC, holding that *uberrimae fidei* applied and that C'Est Moi misrepresented material facts on its insurance application. C'Est Moi appeals.

## Analysis

**[1] 1.** *Uberrimae fidei* is a "longstanding federal maritime doctrine" that "applies to marine insurance contracts." *Certain Underwriters at Lloyds, London* v. *Inlet Fisheries Inc.*, No. 06-35383, slip op. at 1857, 1874 (9th Cir. Feb. 11, 2008); *see also* Cal. Ins. Code § 1900. *Uberrimae fidei* "imposes a duty of utmost good faith," *Inlet Fisheries*, slip op. at 1864, so "an applicant for a marine insurance policy is bound to reveal every fact within his knowledge that is *material* to the risk," *Cigna Prop. & Cas. Ins. Co.* v. *Polaris Pictures Corp.*, 159 F.3d 412, 420 (9th Cir. 1998) (emphasis added). If an insured fails to do so, the insurer may rescind the policy, even if the material misrepresentation wasn't intentional. *Id.*

C'Est Moi argues that paragraph 10 of the insurance policy's General Conditions and Exclusions section supersedes its *uberrimae fidei* obligation by substituting a different, and lower, standard:

> 10. CONCEALMENT OR MISREPRESENTATION:
>
> Any relevant coverage(s) shall be voided if you *intentionally* conceal or misrepresent any material fact or circumstance relating to this insurance, or your insurance application, before or after a loss.

(Emphasis added.) C'Est Moi reads this clause as allowing NHIC to rescind the insurance policy only for a material misrepresentation that is intentional.

**[2]** It's an open question in this circuit whether parties may modify or eliminate an insured's *uberrimae fidei* obligation

through terms in the insurance policy. However, if this were possible at all, it would certainly require very clear policy language, unequivocally disclosing a mutual intent to supersede the insured's common law obligation. *Uberrimae fidei* is a well-entrenched doctrine that protects not merely the insurer but also the integrity of the risk pool; only "an unambiguous statement" in the policy, purporting to supersede the doctrine in express terms, would be sufficient to accomplish that purpose. T. Schoenbaum, The Duty of Utmost Good Faith in Marine Insurance Law: A Comparative Analysis of American and English Law, 29 J. Mar. L. & Com. 1, 13 (1998). The clause here comes nowhere close: It does not mention *uberrimae fidei* or its colloquial equivalent, the "duty of utmost good faith," and it doesn't purport to supersede other rights and responsibilities that the parties may have vis-a-vis each other by operation of law. In short, nothing in paragraph 10 of the policy indicates that it is meant to displace rights or responsibilities imposed by operation of law rather than create an additional set of rights and responsibilities.

We acknowledge that the Eleventh Circuit in *King* v. *Allstate Insurance Co.*, 906 F.2d 1537, 1539-41 (11th Cir. 1990), held that a policy clause similar to paragraph 10 was sufficient to supersede the insured's duty under *uberrimae fidei*, but (for reasons explained above) we are unpersuaded and decline to follow the Eleventh Circuit. We hope, rather, that our colleagues there will reconsider this question the next time they have occasion to rule on it.

**[3] 2.** The district court correctly found that there is no factual dispute as to whether C'Est Moi made material misrepresentations in the insurance policy application. "The fact that the insurer has demanded answers to specific questions in an application for insurance is in itself usually sufficient to establish materiality as a matter of law." *Freeman* v. *Allstate Life Ins. Co.*, 253 F.3d 533, 536 (9th Cir. 2001) (quoting *Thompson* v. *Occidental Life Ins. Co.*, 9 Cal. 3d 904, 915 (1973) (in bank)). Here, NHIC's insurance application asked

for the yacht's purchase price and present insurer, and C'Est Moi misrepresented both facts, thereby making material misrepresentations as a matter of law.[1]

**[4]** C'Est Moi listed the yacht's purchase price in 1986 as "$450,000 ++," while O'Rourke only paid about $300,000 for the yacht when he bought it in 1986. C'Est Moi doesn't dispute that the yacht's purchase price was $300,000. Instead, it argues that the $450,000 figure is accurate because it reflects the amount that O'Rourke had spent restoring the vessel, and that the purchase price wasn't material because the yacht was destroyed by the 1992 fire. But when a marine insurance application "specifically asks for the purchase price," the insured may not substitute, without a clear explanation, the "present market value" for the "actual purchase price." *Certain Underwriters at Lloyd's* v. *Montford*, 52 F.3d 219, 222 (9th Cir. 1995) (emphasis omitted). The purchase price of a vessel "is unquestionably a fact material to the risk," *id.*, as it provides an objective measure of the vessel's worth and the corresponding risk of insuring the vessel. The value of the vessel, as it may or may not have been increased by the owner's efforts over the years, is a far more debatable proposition. It requires an evaluation of whether work done on the vessel was merely for normal upkeep or truly enhanced its worth, and by how much. An insured is not free to substitute his own subjective evaluation of worth for what the insurance company sought to obtain, namely a purchase price that can be presumed to be objective because it was arrived at through arm's length negotiations between parties with opposing interests. By failing to disclose the purchase price and substituting another figure, without clearly disclosing that it had done so, C'Est Moi made a material misrepresentation to NHIC, in violation of its duty of *uberrimae fidei*.

---

[1]C'Est Moi's misrepresentation of either the yacht's purchase price or its present insurer is sufficient to uphold the district court's ruling that C'Est Moi made material misrepresentations. We therefore do not address whether C'Est Moi also made a material misrepresentation by failing to list all of O'Rourke's prior marine losses on the insurance application.

**[5]** C'Est Moi also stated that "Wash Int" was the "present marine insurer," but the yacht wasn't insured in 2001 when the application was filled out. C'Est Moi argues that it made this mistake because the forms were confusing (NHIC's quote request form asked for the *previous* insurer, while its insurance application asked for the *present* insurer). This may show that C'Est Moi's misrepresentation wasn't intentional, but under *uberrimae fidei*, NHIC only needs to show that the misrepresentation was material. *Cigna*, 159 F.3d at 420. NHIC was under the impression that it was taking on a risk that another insurance company had been insuring against, which would have led NHIC to believe that C'Est Moi was a good candidate for insurance. We can presume that, if NHIC had known that the yacht had been uninsured for about 9 years, this "would have affected [NHIC's] decision to insure at all or [. . .] at a particular premium." *Inlet Fisheries*, slip op. at 1877 (quoting *N.Y. Marine & Gen. Ins. Co.* v. *Tradeline (L.L.C.)*, 266 F.3d 112, 123 (2d Cir. 2001)). C'Est Moi therefore made a material misrepresentation by listing "Wash Int" as the present insurer, when the yacht was actually uninsured.

There was no factual dispute as to either of these issues, so summary judgment for NHIC was proper.

**3.** C'Est Moi also argues that the district court erred by relying on the declaration of Rod Clingman—the NHIC underwriter who issued the policy—in determining that the misrepresentations were material. Specifically, C'Est Moi asserts that Clingman's declaration should have been stricken, as C'Est Moi couldn't impeach Clingman because NHIC failed to give C'Est Moi its underwriting guidelines during discovery. But C'Est Moi's misrepresentations were material as a matter of law; Clingman's declaration is beside the point. *See Inlet Fisheries*, slip op. at 1877; *Freeman*, 253 F.3d at 536; *Cigna*, 159 F.3d at 420; *Montford*, 52 F.3d at 222.

\*   \*   \*

**[6]** The parties didn't attempt to contract out of *uberrimae fidei*, and C'Est Moi misrepresented material facts in the insurance policy application. NHIC was therefore entitled to rescind the policy, so the district court correctly granted NHIC summary judgment.

**AFFIRMED**.